**Kenneth TREISTER, et al., Plaintiffs,**

v.

**CITY OF MIAMI et al., Defendants.**

**No. 86–1117–CIV.**

United States District Court,
S.D. Florida.

Aug. 13, 1992.

Joe N. Unger, Miami, FL, Bernard S. Mandler, Miami, FL, James J. Kenny, Kevin J. Murray, Miami, FL, Alan E. Deserio, Tampa, FL, Toby Prince Brigham, Miami, FL, for plaintiffs.

Joel V. Lumer, Miami, FL, for Sierra Club.

Joseph Z. Fleming, Miami, FL, A. Quinn Jones, III, Joel Maxwell, Miami, FL, Parker D. Thomson, Miami, FL, Gary M. Held, Miami, FL, for defendants.

## ORDER

MARCUS, District Judge.

THIS CAUSE comes before the Court upon Defendants' Restated and Amended Motion for Dismissal or Summary Judgment and Plaintiffs' Motion for Leave to File a (Second) Amended Complaint. Before us at this time are various constitutional claims contained in Count V of the [First] Amended Complaint (DE 17). The state law claims contained in Counts I–IV of the Amended Complaint were remanded to the state courts and resolved. The primary issue at this juncture is the preclusive effect of the state court ruling as to the state claims upon the federal constitutional claims remaining before us in Count V. We conclude, for the reasons detailed below, that most of Plaintiffs' federal claims are barred by res judicata and the full faith and credit statute, and, accordingly, Defendants' motion for summary judgment is GRANTED IN PART. Specifically, Defendants' motion for summary judgment is GRANTED as to Plaintiffs' constitutional claims asserting a taking without just compensation, a substantive due process violation based upon arbitrary and capricious conduct, and a due process takings claim. In addition, Plaintiffs' motion for leave to amend is DENIED.

### I. The Summary Judgment and Motion to Amend Standards

The standard to be applied in reviewing a summary judgment motion is stated unambiguously in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

It may be entered only where there is *no* genuine issue of material fact. Moreover, the moving party has the burden of meeting

this exacting standard. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

In applying this standard, the Eleventh Circuit has explained:

> In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608; [*Environmental Defense Fund v.*] *Marsh,* 651 F.2d [983] at 991 [ (5th Cir.1981) ]. All reasonable doubts about the facts should be resolved in favor of the non-movant. *Casey Enterprises v. Am. Hardware Mutual Ins. Co.,* 655 F.2d 598, 602 (5th Cir.1981). If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Marsh,* 651 F.2d at 991; *Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co.,* 420 F.2d at 1213. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Impossible Electronic [Techniques, Inc. v. Wackenhut Protective Systems, Inc.],* 669 F.2d [1026] at 1031 [ (5th Cir.1982) ]; *Croley v. Matson Navigation Co.,* 434 F.2d 73, 75 (5th Cir.1970).

Moreover, the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. at 160, 90 S.Ct. at 1609–10; *Marsh,* 651 F.2d at 991. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the non-moving party has introduced no evidence whatsoever. *Brunswick Corp. v. Vineberg,* 370 F.2d 605, 611–12 (5th Cir.1967). *See Dalke v.*

*Upjohn Co.,* 555 F.2d 245, 248–49 (9th Cir.1977).

*Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368–69 (11th Cir.1982); *see also Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486, 1502 (11th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986).

The United States Supreme Court has provided significant additional guidance as to the evidentiary standard which trial courts should apply in ruling on a motion for summary judgment:

> [The summary judgment] standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Brady v. Southern R. Co.,* 320 U.S. 476, 479–80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943).

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The Court in *Anderson* further stated that "[t]he mere existence of a scintilla of evidence in support of the position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252, 106 S.Ct. at 2512. In determining whether this evidentiary threshold has been met, the trial court "must view the evidence presented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Id.* at 254, 106 S.Ct. at 2513. If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. at 2513–14.

In another case the Supreme Court declared that a non-moving party's failure to prove an essential element of a claim renders all factual disputes as to that claim immaterial and requires the granting of summary judgment:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will *bear* the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (emphasis added).

As for the motion to amend, the Court of Appeals for the Eleventh Circuit has written:

A decision whether to grant leave to amend is within the discretion of the district court, *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), but that discretion is severely circumscribed. Federal Rule of Civil Procedure 15(a) declares that leave to amend "shall be freely given when justice so requires." Because "this mandate is to be heeded," there must be a justifying reason" for a court to deny leave. *Foman,* 371 U.S. at 182, 83 S.Ct. at 230; *see also Halliburton & Associates v. Henderson, Few & Co.,* 774 F.2d 441, 443 (11th Cir. 1985) ("substantial reason" needed).

*Rudolph v. Arthur Andersen & Co.,* 800 F.2d 1040, 1041–42 (11th Cir.1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987). "The mere passage of time, without anything more, is an insufficient reason to deny leave to amend." *Floyd v. Eastern Airlines, Inc.,* 872 F.2d 1462, 1490 (11th Cir. 1989), *rev'd on other grounds,* 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). As stated by the Third Circuit, "[t]he district court may deny leave to amend only if a

plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party. The court may also refuse to allow an amendment that fails to state a cause of action." *Adams v. Gould Inc.,* 739 F.2d 858, 864 (3d Cir.1984), *cert. denied,* 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985).

## II. Procedural History

The procedural history of this case is complex, involving both the state and federal courts at various junctures. After several attempts to obtain rezoning of their Coconut Grove property, Plaintiffs filed a petition for writ of certiorari with the Circuit Court of the Eleventh Judicial Circuit, Appellate Division and an original, *de novo* action in the Circuit Court, Eleventh Judicial Circuit. The Appellate Division, Circuit Court denied Plaintiffs' petition for certiorari, *see* Order, No. 86–120AP (Fla. 11th Jud.Cir.App.Div. Aug. 16, 1988), *filed at* Volume I, Component 8, entry 87,[1] and was in turn affirmed by the Third District Court of Appeals. *See Treister v. City of Miami,* 537 So.2d 1140 (Fla. 3d DCA 1989) [hereinafter *"Treister I"*]. The de novo action—this action—was removed to federal court on May 23, 1986. *See* Petition for Removal (DE 1). Subsequent to removal, on August 5, 1986, Plaintiffs filed their [First] Amended Complaint. *See* Amended Complaint (DE 17). The [First] Amended Complaint included in counts I–IV a variety of pendent state law claims, and in Count V contained a prayer for relief under 42 U.S.C. § 1983. *See id.* This Court, the Honorable Eugene P. Spellman, United States District Judge, before whom the case was then pending, declined to exercise jurisdiction over the state law claims and remanded Counts I–IV to the Florida Circuit Court for the Eleventh Judicial Circuit. *See* Order Remanding State Claims and Retaining Jurisdiction Over Section 1983 Claim [etc.] (DE 64).[2] In addi-

---

1. Pleadings filed in and Orders entered by the federal court are cited at their docket entry (DE). Pleadings filed in and Orders entered by the state courts are cited as such.

2. The Order entered by Judge Spellman on August 3, 1987 provided as follows:

This CAUSE comes before the Court *sua sponte* and on Defendants' CITY OF MIAMI, et al.,

Motion to Dismiss. This CAUSE was removed to this Court on May 23, 1986. There is, however, pending in the Appellate Division, Circuit Court of the Eleventh Judicial Circuit of Florida, Case No: 86–120–AP, an appeal pursuant to Rule 9.110, Florida Rules of Appellate Procedure, which involves the property which is the subject matter in this case. *See*

tion, this Court stayed consideration of the section 1983 action (Count V) pending resolution of the state law claims by the state courts. *Id.* These remanded state law claims, discussed in greater depth below, were resolved on summary judgment in favor of Defendants by the Florida circuit court. *See* Tr. of Hr'g, No. 86–17121, at 113 (Fla. 11th Jud.Cir. July 20, 1989) *filed at* Volume III, Component 18; Final Summary Judgment, No. 86–17121 (Fla. 11th Jud.Cir. July 26, 1989) *filed at* Volume III, Component 5, entry 10 [hereinafter *"Treister II"*]. Plaintiffs appealed the order of final summary judgment to the Third District Court of Appeals, which affirmed the Circuit Court's order of final summary judgment. *See Treister v. City of Miami,* 575 So.2d 218, 219–20 (Fla. 3d DCA 1991) [hereinafter *"Treister III"*]. No further appeal was taken.

In June 1991 Plaintiffs moved this Court to reinstate Count V. In addition, during that month this case was assigned to the undersigned pursuant to a blind random drawing, upon the death of the Honorable Eugene P.

Spellman and the recusal of the Honorable Federico A. Moreno. The instant motions to amend and for dismissal or summary judgment followed.

### III. The [First] Amended Complaint

The [First] Amended Complaint raised five claims for relief. Counts I–IV, as discussed above, raised state law claims and were remanded and resolved by the Florida circuit court. Generally, the [First] Amended Complaint alleged that the Commodore Bay property, owned by Plaintiffs and zoned for single family residences, should properly be rezoned for other types of residences and commercial development. Plaintiffs also alleged generally that despite four attempts to persuade the Miami City Commission to rezone the property, the Commission has refused, and "no economically viable use may be made of the Commodore Bay property as presently zoned." Amended Complaint at ¶ 34. Plaintiffs claimed that various impermissible considerations, including the City of Miami's fear of competition from Plaintiff's develop-

---

Joint Report of Parties, March 2, 1987. That appeal is from the final order of the Miami City Commission denying the zoning application of the Plaintiffs herein, and presents substantially the issues presented in this case, at least insofar as Counts I–IV are concerned. Count V is a claim pursuant to 42 U.S.C. § 1983.

Since this Court, upon a review of the file in the case and the Defendants' Motion to Dismiss, has determined that the interests of judicial economy and fairness to litigants do not require this Court to exercise jurisdiction over the pendent claims, it is hereby

ORDERED AND ADJUDGED that Count I, Count II, Count III and Count IV of the Amended Complaint are REMANDED to the State Court. Regarding Count V, violation of 42 U.S.C. § 1983, this Court will retain jurisdiction but will ABSTAIN from addressing the merits of the claim. *Younger v. Harris,* 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669] (1971); *Pennzoil Co. v. Texaco, Inc.,* [481] U.S. [1], 107 S.Ct. 1519 [95 L.Ed.2d 1] (1987).

Order Remanding State Claims and Retaining Jurisdiction Over Section 1983 Claim [etc.] (DE 64). In addition, the Order contained a footnote at the end of the Done and Ordered clause. The text of that note provided: "In light of this Order, this Court seriously recommends that the parties consider agreeing on raising the § 1983 claim in the State Court proceeding." *Id.* at 2 n. * *. As discussed in the text, the appellate division action referred to in the order of remand

upheld the City Commission's action, *see* Order (Aug. 16, 1988), *filed at* Volume I, Component 8, entry 87, and was in turn upheld by the Third District Court of Appeals, *see Treister I,* 537 So.2d 1140 (Fla. 3d DCA 1989).

Following remand, the significance of Judge Spellman's order, particularly the footnote, was vigorously debated in the Florida circuit court *de novo* proceeding. *See, e.g.,* Order Denying Defendants' Motions to Dismiss [without prejudice, etc.] No. 86–17121 (Fla. 11th Jud.Cir. Dec. 10, 1987) *filed at* Volume III, Component I, entry 10; Motion by Plaintiffs for This Court to Exercise Jurisdiction Over Count V, No. 86–17121, (Fla. 11th Jud.Cir. Jan. 6, 1988), *filed at* Volume III, Component I, entry 16; Transcript of Hearing, No. 86–17121, at 5–26 (Fla. 11th Jud.Cir. Jan. 15, 1988). Ultimately, the circuit court concluded it did not have jurisdiction over Count V. *See* Tr. Hr'g, No. 86–17121, at 26 (Fla. 11th Jud.Cir. Jan. 15, 1988); Tr. Hr'g, No. 86–17121 at 3–7 (Fla. 11th Jud.Cir. July 20, 1989). In addition, Plaintiffs unsuccessfully moved the district court to remand Count V to the Florida circuit court. *See, e.g.,* Notice by Plaintiffs [etc.] (DE 68); Notice by Defendants [etc.] (DE 69), Plaintiffs' Request for Emergency Determination of Plaintiffs' Suggestion for Remand of Count V (DE 72); Order Denying Motion for Remand (DE 73). *See Rindley v. Gallagher,* 929 F.2d 1552, 1557–58 (11th Cir.1991) (discussing *Younger* abstention); *Redner v. Citrus County,* 919 F.2d 646, 648–49 (11th Cir.1990), *cert. denied* [502 U.S. 909], 112 S.Ct. 303 [116 L.Ed.2d 246] (1991).

ment and an attempt to facilitate public acquisition of the property, motivated the Commission's decisions. Amended Complaint at ¶¶ 36–54. Specifically, in Count I Plaintiffs sought injunctive relief requiring Defendants to rezone the Commodore Bay property. In Count II Plaintiffs alleged that the current zoning scheme has "deprived Plaintiffs of all economically viable and all reasonable beneficial use of the Commodore Bay property, without full compensation in violation of Article X, Section 6 of the Constitution of the State of Florida," requested a finding that a de facto taking had occurred and demanded damages. Amended Complaint at ¶ 61. In Count III Plaintiffs sought to enjoin Defendant City of Miami from proceeding further with several projects, which might strain the water, sewer and traffic capacities of Coconut Grove to the point that the infrastructure could not support the project Plaintiffs hoped to build on the Commodore Bay property. In Count IV Plaintiffs sought to enjoin permanently various actions by the City which would interfere with Plaintiffs ability to use the Commodore Bay property if it is not rezoned. All of these state law claims were resolved "on the merits," *See* Tr. of Hr'g, No. 86–17121, at 113 (Fla. 11th Jud.Cir. July 20, 1989) *filed at* Volume III, Component 18, against Plaintiffs on summary judgment. Count V, the only count alleging a violation of federal law, and the only count before us now, alleges that Defendants' actions, under color of state law, give rise to various constitutional claims under the 42 U.S.C. § 1983. As discussed above, Counts I–IV of the [First] Amended Complaint were resolved by the state courts. It is clear that this court refused jurisdiction, remanding these counts to state court where they were definitively resolved.

### IV. Count V–Federal Constitutional Claims

The Eleventh Circuit has established that "[a] plaintiff seeking to challenge a local government's refusal to rezone his property may bring four different causes of action." *Executive 100 Inc. v. Martin County*, 922 F.2d 1536, 1540 (11th Cir.), *cert. denied*, 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991):

First, a plaintiff may claim that the zoning applied to his land constitutes a taking of his property without just compensation in contravention of the Fifth Amendment. [*Eide v. Sarasota County*, 908 F.2d 716, 721 (11th Cir.1990), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991)] (labeling this claim a "just compensation claim"). Second, a plaintiff may claim that the zoning applied to his property goes too far and destroys the value of his property to such an extent that it amounts to a taking by eminent domain without due process of law. *Id.* at 721 (labeling this claim a "due process takings claim"). Third, a plaintiff may argue that the regulation, either on its face or as applied, is arbitrary and capricious, does not bear a substantial relation to the public health, safety, morals, or general welfare, and therefore is an invalid exercise of police power. *Id.* at 721–22 (labeling this claim as an "arbitrary and capricious due process claim"). Finally, a plaintiff may claim that the zoning denies him equal protection of the laws, either because it treats a suspect class differently from others, because it affects a fundamental right, or because it treats a non-suspect class differently and is not rationally related to a legitimate government purpose. *Id.* at 722 (labeling this an "equal protection" claim). *Id.* at 722.

*Executive 100*, 922 F.2d at 1540. *See Eide v. Sarasota County*, 908 F.2d 716, 720–24 (11th Cir.1990), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1073, 112 L.Ed.2d 1179 (1991). Although it is not clear from the [First] Amended Complaint that Plaintiffs have asserted all four types of claim, Plaintiffs now assert that they intended to do so, and, because of the unique posture of this case, we will construe the [First] Amended Complaint as if they had done so.

■ Plaintiffs have persuaded us that their claims are ripe for adjudication at this time. Under *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), a takings claim stemming from a regulatory taking is not ripe until the Plaintiff establishes (1) that a final decision by the relevant authority regarding

application of the subject property has been made and (2) that no adequate state remedy, such as inverse condemnation, is available to redress the injury caused by the final decision. *See Eide*, 908 F.2d at 720–21; *Corn I*, 816 F.2d 1514, 1516–17 (11th Cir.1987).[3] As for the first prong, the zoning decision has been finally made, and Plaintiffs made numerous applications for zoning in order to establish the extent of development that would be permitted. *See Eide*, 908 F.2d at 725 & n. 16, 726 & 726 n. 7; *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1733–77 (11th Cir.1989). As to the second prong, at the time of the alleged taking, no monetary compensation could be given in the state courts, and the federal takings claim was ripe once the zoning ruling was final. *See Corn I, supra; Hoehne v. County of San Benito*, 870 F.2d 529, 534 (9th Cir.1989) ("[T]he appropriate point for determining the adequacy of state compensation procedures is at the time of the alleged taking."). The equal protection, arbitrary and capricious due process and due process takings claims are ripe as well.[4]

The primary question before us is the preclusive effect of the state court rulings on Counts I–IV upon Plaintiffs' federal claims. The full faith and credit statute provides that judicial proceedings of any state "shall have the same full faith and credit in every court within the United States...." 28 U.S.C. § 1738; *see Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 587 (11th Cir.1990) ("A federal court must accord a state court proceeding the same preclusive effect the state proceeding would have under state law."). In *Lake Lucerne Civic Ass'n v. Dolphin Stadium Corp.*, 878 F.2d 1360 (11th Cir.1989), *cert. denied*, 493 U.S. 1079, 110 S.Ct. 1132,

107 L.Ed.2d 1038 (1990), the Eleventh Circuit addressed the proper analysis of the preclusive effect in federal court of a Florida state court judgment. The Court wrote:

> In *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court "made clear that issues actually litigated in a state-court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment is rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 80–85, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984). In *Migra*, the Supreme Court held that the same preclusive effect applied to a claim which "a § 1983 litigant could have raised but did not raise in the earlier state-court proceeding," *Id.* and that pursuant to the Full Faith and Credit Clause of the Constitution, art. IV, § 1, and the federal full faith and credit statute, 28 U.S.C. § 1738, "[i]t is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Id.* at 81, 104 S.Ct. at 896. *See also Gjellum v. City of Birmingham, Alabama*, 829 F.2d 1056, 1060 (11th Cir.1987).

*Lake Lucerne*, 878 F.2d at 1366 (ellipses in original).

■ Plaintiffs devote considerable energy to their argument that the trial court erred in granting summary judgment in *Treister II*, and that to allow the state court rulings to have preclusive effect on Plaintiffs' constitutional claims "would be to compound the error." Memorandum In Opposition To Defendants ... Motion for Dismissal, or Sum-

---

3. The *Corn* litigation found its way to the Eleventh Circuit in both 1987 and 1990. As both decisions are relevant to the case *sub judice*, and are cited repeatedly, we will refer to the 1987 case, *Corn v. City of Lauderdale Lakes*, 816 F.2d 1514 (11th Cir.1987) as *Corn I* and *Corn v. City of Lauderdale Lakes*, 904 F.2d 585 (11th Cir. 1990) as *Corn II*. A third published opinion, entered by the district court in 1991, is cited as *Corn III*. *See Corn v. City of Lauderdale Lakes*, 771 F.Supp. 1557 (S.D.Fla.1991) (Paine, J.).

4. Finality of the zoning decision is required for an equal protection claim to be ripe. *See gener-*

*ally Eide*, 908 F.2d at 725 n. 16. Due process takings claims require a final decision to be ripe, but the Eleventh Circuit has not decided whether utilization of state procedures for obtaining compensation is an element of ripeness. *Executive 100*, 922 F.2d at 1540 n. 12. "The ripeness of an as applied arbitrary and capricious due process claim depends upon the nature of the claim, which is often revealed by the remedy sought." *Eide*, 908 F.2d at 726. As Plaintiffs have conceded that this claim is barred, we do not consider its ripeness. *See generally Eide*, 908 F.2d at 720–26 & nn. 13, 16–17.

mary Judgment, at 10 [hereinafter "Pls. Resp."]. It is possible, of course, that the state circuit court incorrectly granted summary judgment for Defendants. The state appeals process, however, was the proper avenue for Plaintiffs to pursue such an objection, and Plaintiffs did in fact appeal the circuit court's order of final summary judgment. *See Treister III*, 575 So.2d 218 (Fla. 3d DCA 1991). The appeal, however did not challenge the basis of the circuit court's ruling, but rather Plaintiffs unsuccessfully "claim[ed] that changed circumstances in the use of the surrounding properties have entitled him to relief in his original action." *Id.* at 219. The appeal failed, and final judgment in favor of Defendants was affirmed. *Id.* at 220. If Plaintiffs disagreed with the District Court of Appeals' ruling, they could have then petitioned the Florida Supreme Court for review, but they did not do so. The Plaintiffs may not, however, obtain in this court *de novo* review of the state court ruling. The federal district courts lack jurisdiction to sit as appellate courts reviewing state court proceedings. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983); *Staley v. Ledbetter*, 837 F.2d 1016, 1017–18 (11th Cir.1988) ("Federal courts are not a forum for appealing state court decisions.").

Plaintiffs also suggest that under *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982), collateral estoppel and full faith and credit should not apply here. Plaintiffs cite *Kremer* for the proposition that collateral estoppel does not apply "when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue." Pls. Resp. at 12–13 (quoting *Kremer*, 456 U.S. at 480–81, 102 S.Ct. at 1897). The *Kremer* Court continued, " 'Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of the procedures fol-

lowed in prior litigation.' " *Kremer*, 456 U.S. at 481, 102 S.Ct. at 1897 (quoting *Montana v. United States*, 440 U.S. 147, 164, 99 S.Ct. 970, 979, 59 L.Ed.2d 210 (1979)). This Court has reviewed the record carefully, and there is no indication that the Florida state courts used unfair procedures, or that the state courts were qualitatively substandard or that the proceedings were insufficiently extensive. The Florida circuit court held numerous hearings in this case, received lengthy pleadings on Defendants' motion for final summary judgment, and heard the equivalent of 115 transcript pages of oral argument on that motion. *See* Tr. Hr'g, No. 86–17121, at 1–115 (Fla. 11th Jud.Cir. July 20, 1989) *filed at* Volume III, Component 18.[5]

### The Just Compensation Claim

The preclusive effect of *Treister I* on the taking without just compensation claim has been the primary focus of the numerous memoranda filed and the lengthy oral argument heard with regard to the instant motions. Summary judgment based on res judicata is proper if (1) Florida preclusion law would bar litigation of the federal just compensation claim and (2) Plaintiffs did not, or could not, reserve their right to litigate their federal claim in a federal forum. *See Fields v. Sarasota Manatee Airport Authority*, 953 F.2d 1299, 1307 (11th Cir.1992). Despite Plaintiffs' arguments to the contrary, we believe that Florida preclusion principles nonetheless bar the instant just compensation claim, and that Plaintiffs did not and could not effectively reserve their right to litigate in a federal forum.

### 1. Florida Preclusion Law

The Florida Supreme Court has summarized Florida's preclusion principles as follows:

It has been well settled ... that several conditions must occur simultaneously if a matter is to be made *res judicata:* identity of thing sued for; identity of the cause of

---

5. Plaintiffs also suggest that because *National Bulk Carriers*, 450 So.2d 213 (Fla.1984) prohibited recovery of compensation for a taking by zoning, the Florida state court decision is constitutionally inadequate under *Kremer*, and therefore void for res judicata purposes. We disagree.

The unavailability of compensation as a remedy does not affect the procedural fairness, extensiveness or quality of adjudication of that proceeding. Second, it is unclear that *National Bulk Carriers* did in fact prohibit recovery. *See infra* text accompanying note 6.

action; identity of parties; identity of the quality in the person for or against whom the complaint is made. It is also a settled rule that when the second suit is between the same parties, but based upon a different cause of action from the first, the prior judgment will not serve as an estoppel except as to those issues actually litigated and determined in it. . . . The determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions.

*Albrecht v. State,* 444 So.2d 8, 12 (Fla.1984) (citations omitted) *superseded by statute on other grounds, as stated in Bowen v. Florida Dep't of Envtl. Regulation,* 448 So.2d 566 (Fla. 2d DCA 1984), *approved and adopted,* 472 So.2d 460 (Fla.1985). The only issues in dispute with regard to Florida preclusion law are whether the takings claim before the state court was "actually litigated" and whether the state law claim or the issues determined in the state law suit are sufficiently identical to the federal claim. It is undisputed that the parties and their capacities are identical here and in *Treister II.*

### a. The state takings claim was "actually litigated."

█ Plaintiffs claim they did not litigate the issues or facts comprising a state law takings claim. In Count II of the [First] Amended Complaint, Plaintiffs allege that the current zoning scheme has "deprived Plaintiffs of all economically viable and all reasonable beneficial use of the Commodore Bay property, without full compensation in violation of Article X, Section 6 of the Constitution of the State of Florida." Amended Complaint at ¶ 61. Plaintiffs argue that the order of final summary judgment, however, could not have resolved the takings issue raised in Count II. Plaintffs posit that because the Florida Supreme Court in *Dade County v. National Bulk Carriers,* 450 So.2d 213 (Fla.1984), held that a landowner could not obtain money damages for confiscatory zoning, that therefore the circuit court's ruling on the inverse condemnation count is a nullity and cannot in any way be *res judicata* on the Fifth Amendment just compensation claim raised here. We disagree with Plain-

tiff's view of the impact of *National Bulk Carriers* on this issue. Moreover, it is unclear to us that at the time the circuit court entered its order of final summary judgment, no claim for monetary damages was available.

First, *National Bulk Carriers* held only that no money damages were available for an inverse condemnation claim. Despite the inability to obtain damages for a confiscation by zoning, under *National Bulk Carriers* the Florida courts could still grant declaratory and injunctive relief if the zoning constituted a taking. *See National Bulk Carriers,* 450 So.2d at 216; *Corn I,* 816 F.2d at 1517 ("[W]here a zoning ordinance is confiscatory . . relief may be obtained by instituting a suit to declare the ordinance invalid and to enjoin its enforcement."). In *Mailman Development Corp. v. City of Hollywood,* which was relied upon by the Florida Supreme Court in *National Bulk Carriers,* 450 So.2d at 216, the Fourth District Court of Appeals wrote as follows:

> Under our present Constitution, Article X, Section 6, no private property shall be taken except for public purposes and with full compensation to the owner. But there is a clear distinction between the appropriation of private property for public use in the exercise of the power of eminent domain, and the regulation of the use of property under the police power exercised to promote the health, morals and safety of the community. We hold that the enactment of a zoning ordinance under the police power does not entitle the property owner to seek compensation for the taking of the property through inverse condemnation. *If the zoning ordinance as applied to the property involved is arbitrary, unreasonable, discriminatory, or confiscatory, (as defendant has alleged in the other counts still pending before the trial court), the relief available to the property owner is a judicial determination that the ordinance is either invalid, or unenforceable as pertains to plaintiff's property.*

*Mailman Development,* 286 So.2d 614, 615 (Fla. 4th DCA 1973) (emphasis added), *cert. denied,* 293 So.2d 717 (Fla.), *cert. denied,* 419 U.S. 844, 95 S.Ct. 77, 42 L.Ed.2d 72 (1974).

In the instant case, Count I of the [First] Amended Complaint sought declaratory and equitable relief from the Florida court, and Count II sought both damages and all other appropriate relief. In fact, in their response brief to the motion for summary judgment, Plaintiffs argued that the prayer for equitable relief from the challenged zoning was properly before the circuit court. Pls. Resp. in Opp'n to Defs. Mot. for Entry of Summ. J. at 20–22 (Fla. 11th Jud.Cir. Dec. 22, 1988) *filed at* Volume III, Component 4, entry 59. Plaintiffs maintained that the complaint was "premised upon the fact that the changing social, physical, and economic character of the surrounding neighborhood renders the present R/S–1/1 (single family residential) zoning ... confiscatory." *Id.* at 21. Plaintiffs argued that the equitable claim raised in Count I was the proper avenue to raise "constitutional challenges to [a] ... confiscatory zoning decision." *Id.* Despite the difference in remedy (declaratory and injunctive relief, on the one hand, and compensation on the other), it is clear that a showing of facts sufficient to constitute an unconstitutional taking without just compensation would require the invalidation or enjoining of the zoning under *National Bulk Carriers.* Had the circuit court in *Treister II* found any genuine issue of fact with regard to the claim of (Florida) unconstitutional confiscatory zoning, it would not have granted final summary judgment for Defendants, but rather would have denied summary judgment as to Plaintiffs' requests to enjoin enforcement or strike the challenged zoning.

Second, although Plaintiffs argue that under *National Bulk Carriers* no inverse condemnation cause of action for damages existed for confiscatory zoning at the time summary judgment was granted, Plaintiffs have not shown that their view of the state of the law is correct. In *Corn I,* which was filed in May 1987, the panel observed that the Eleventh Circuit and various Supreme Court justices had questioned the constitutionality of denying compensation for a temporary regulatory taking, *see Corn I,* 816 F.2d at 1519–20, as prescribed by *National Bulk Carriers.* One month after *Corn I* was decided, and before the entry of final summary judgment in *Treister II,* the United States Supreme

Court filed its opinion in *First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). *First English* seemingly overruled *National Bulk Carriers,* and held that "[i]nvalidation of the ordinance ..., though converting the taking into a 'temporary' one, is not a sufficient remedy to meet the demands of the Just Compensation Clause." *Id.* at 319, 107 S.Ct. at 2388. In fact, Plaintiffs recognized that under *First English* they were probably entitled to obtain damages for confiscatory zoning despite *National Bulk Carriers,* and they vigorously argued this point to the circuit court at the July 20, 1989 summary judgment hearing:

> [T]he Supreme Court of the United States has said that a remedy in inverse condemnation is constitutionally required.
>
> The Third District noted that in the footnote in the *Bensch* case [*Bensch v. Metropolitan Dade County,* 541 So.2d 1329, 1330 n. 1 (Fla. 3d DCA), *review denied,* 549 So.2d 1013 (1989) ] at 1330 of the opinion. They said that the apparent holding of the United States Supreme Court [in *First English* ] was that there was a right of damages even from an invalid regulation.
>
> In so doing they noted [without deciding] the apparent overruling of the National Bulk Carriers case by First English Church, and there have been a number of other Florida cases that have also applied First English Church, Your Honor, and they make it clear that the remedy of inverse condemnation is alive and well....

Tr. at 69–70 (Fla. 11th Jud.Cir. July 20, 1989), *filed at* Volume III, Component 18.

In addition, in their response brief to the motion for summary judgment, Plaintiffs argued to the circuit court that damages were available. *See* Pls. Resp. in Opp'n Defs. Mot. for Entry of Summ. J. at 23–31 (11th Jud. Cir. Dec. 22, 1988) *filed at* Volume III, Component 4, entry 59. Specifically, Plaintiffs quoted to the circuit court language from a federal district court case which held that " '[T]he recent Supreme Court case of *First English* ... requires that the state recognize an inverse condemnation claim for money damages where a zoning regulation amounts

to a taking.' " *See id.* at 26 (quoting *East–Bibb Twiggs Neighborhood v. Macon–Bibb Planning and Zoning Commission*, 662 F.Supp. 1465, 1468 (M.D.Ga.1987), *aff'd*, 896 F.2d 1264 (11th Cir.1989)). In addition, the courts of this circuit that have subsequently addressed the issue have assumed that *First English* requires states to provide a cause of action for inverse condemnation in the zoning context. In fact, the Eleventh Circuit in a zoning case recently observed that the Florida courts would allow a cause of action for inverse condemnation for a regulatory taking. *See Executive 100*, 922 F.2d at 1539 n. 3, 1542 (11th Cir.1991) ("The Florida Courts have recognized that under *First Lutheran Church* property owners have the right to bring reverse condemnation proceedings seeking compensation for regulatory takings."); *see also East–Bibb Twiggs Neighborhood Ass'n. v. Macon Bibb Planning and Zoning Commission*, 896 F.2d 1264, 1266 (11th Cir.1990) (citing *First English* as "requiring states to recognize inverse condemnation claim for damages when zoning regulation amounts to taking"); *Barima Inv. Co. v. United States*, 771 F.Supp. 1187 (S.D.Fla. 1991) (King, J.) ("[T]he Eleventh Circuit has interpreted *First English* to require states to recognize inverse condemnation claims for damages when a zoning regulation amounts to a taking." (citing *East–Bibb Twiggs, supra* )), *aff'd without opinion*, 959 F.2d 972 (11th Cir.1992); *Joint Ventures, Inc. v. Department of Transp.*, 563 So.2d 622, 625 (Fla. 1990); *Monroe County v. Gonzalez*, 593 So.2d 1143, 1145 (Fla. 3d DCA 1992). Significantly, the state law claims were resolved "on the merits," *See* Tr. of Hr'g, No. 86–17121, at 113 (Fla. 11th Jud.Cir. July 20, 1989) *filed at* Volume III, Component 18, and not on the basis of failure to state a claim upon which relief could be granted.

Finally, we observe that the Third District Court of Appeals in *Treister III* interpreted *Treister II* as denying the claim for money damages based upon res judicata grounds, and not on the grounds that *National Bulk Carriers* made money damages unavailable. *See Treister III*, 575 So.2d at 219. Accord-ingly, we believe that the inverse condemnation claim for damages was probably viable at the time summary judgment was granted.[6] We conclude that regardless of whether monetary damages were available, however, Plaintiffs state law takings claim was "actually litigated."

### b. Identity of issues and causes of action litigated

■ The remaining issue is whether the Florida constitutional claim is sufficiently identical to the federal just compensation claim. "Florida preclusion law defines identical causes of action as causes sharing 'similarity of facts essential to both actions.' " *Fields*, 953 F.2d at 1308 (quoting *Amey, Inc.*, 758 F.2d at 1510). "The determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions." *Albrecht*, 444 So.2d at 12 (Fla.1984).

We have no doubt that the issues raised by a claim for a taking, and the elements of the claim, under the Florida Constitution, are sufficiently similar to the parallel claim under the United States Constitution so as to constitute identical claims for res judicata purposes, and that the issues necessarily litigated therein are sufficiently identical for issue preclusion purposes. Under the Fifth Amendment, "[t]he application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state interests, or denies an owner economically viable use of his land." *Agins v. Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980) (citations omitted) (citing, *inter alia*, *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 138 n. 36, 98 S.Ct. 2646, 2666 n. 36, 57 L.Ed.2d 631 (1978)). Citing *Agins*, the Fifth District Court of Appeals recently wrote:

A regulation effects a taking if it does not substantially advance a legitimate state interest *or* if the regulation denies an eco-

---

6. However, we have found no case in which the Supreme Court of Florida expressly disavowed *National Bulk Carriers. See also Morales*, 557

So.2d at 656 (relying on *National Bulk Carriers* after *First English* had been decided).

nomically viable use of his land. *Agins v. City of Tiburon*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). It is axiomatic that the constitutions of the United States and the state of Florida require that just and full compensation be paid in the event of a taking. U.S. Const. amend. V; Art. X, § 6(a), Fla. Const. *Orlando Orange County Expressway Authority, v. W & F Agrigrowth–Fernfield, Ltd.*, 582 So.2d 790 (Fla. 5th DCA), *review denied*, 591 So.2d 183 (Fla.1991); *see Snyder v. Board of County Comm'rs*, 595 So.2d 65, 70 (Fla. 5th DCA 1991).

The Florida courts regularly refer to federal case law in discussing the regulatory taking standard under Florida law. *See, e.g., Joint Ventures*, 563 So.2d at 625; *Albrecht*, 444 So.2d at 10, 12 (discussing a takings claim under both the Florida and United States' constitutions and citing *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922)). In *Graham v. Estuary Properties, Inc.*, the Florida Supreme Court explicitly relied upon federal takings cases in determining the factors to consider when deciding whether a regulation constitutes a taking. 399 So.2d 1374, 1381 (Fla.), *cert. denied*, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981); *see also id.* at 1384 (Adkins, J., dissenting); *Estuary Properties v. Askew*, 381 So.2d 1126, 1137–39 (Fla. 1st DCA 1979) (discussing Florida and United States constitutional law), *aff'd in part, rev'd in part sub nom., Graham v. Estuary Properties*, 399 So.2d 1374 (Fla.), *cert. denied*, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981); *Glisson v. Alachua County*, 558 So.2d 1030, 1034–35 (Fla. 1st DCA), *review denied*, 570 So.2d 1304 (1990); *Pinellas County v. Brown*, 420 So.2d 308, 310 (Fla. 2d DCA 1982) (taking exists if regulation "substantially deprived [a landowner] of all beneficial uses of the property"), *petition denied*, 430 So.2d 450 (Fla.1983). Indeed, Plaintiffs, in the course of pursuing their inverse condemnation claim, relied interchangeably upon state and federal takings law. *See* Pls.Resp. in Opp'n to Defs.Mot.Entry Summ.J. at 23–25 (Fla. 11th Jud.Cir. Dec. 22, 1988) *filed at* Volume III, Component 4, entry 59. In fact, in considering whether a § 1983 taking action was barred by res judi-

cata, the Eleventh Circuit in *Corn II* cited *Albrecht* for the appropriate standard for a taking: "[T]o maintain an action for a regulatory taking, plaintiff must present evidence of a diminution in the value of the property as well as a lack of alternative uses occasioned by the taking. *See Albrecht*, 444 So.2d at 12." *Corn II*, 904 F.2d at 587. *See Fields*, 953 F.2d at 1308 ("[W]e conclude that the federal takings claim is essentially the same claim as that raised in the Florida law inverse condemnation action for purposes of applying Florida's merger and bar rules.")

Plaintiffs argue that *Corn II*, 904 F.2d 585 (11th Cir.1990), *Lake Lucerne*, and the Supreme Court's recent decision in *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), show that the causes of action are not identical. We find these cases inapposite, and we stress that on this motion the proper focus is upon the preclusive effect of the order of final summary judgment in *Treister II*, not the certiorari proceedings involved in *Treister I*. *Lake Lucerne* offers no guidance as to whether a state law constitutional taking claim, heard *de novo* in an original action, is *res judicata* on a federal law takings claim. In *Lake Lucerne*, the Eleventh Circuit considered the preclusive effect of three prior state proceedings: a zoning hearing; appeals from that zoning hearing (the "Norwood–Norland litigation"); and litigation commenced before the zoning hearing (the "Rolling Oaks litigation"). None of these instances of prior litigation resolved de novo a takings claim. Rather, in the Rolling Oaks litigation, the circuit court dismissed as premature the claim for taking without just compensation, with leave to amend. *Lake Lucerne*, 878 F.2d at 1363. The District Court of Appeals subsequently ruled that the count should properly have been dismissed without leave to amend, in order to allow the refiling of a new suit when the claim matured. *Id.* at 1364. The Eleventh Circuit found the zoning hearing itself too informal and too unlike a judicial proceeding to have administrative res judicata effect. *Id.* at 1367. The final instance of prior litigation, the Norwood–Norland litigation, involved an "appeal in the Florida circuit court concerning the zoning

action," and a denial of certiorari review of the circuit court's opinion. *Id.* at 1364. The Eleventh Circuit specifically observed that the Norwood–Norland litigation "involved a direct appeal from the zoning action. It did not involve a claim of unconstitutional taking without compensation. That later issue was not raised until the still pending and stayed state court proceeding and this federal case were filed." *Id.* at 1368. In *Treister II*, by contrast, a claim for a taking without just compensation was explicitly raised. *See* Amended Complaint at ¶ 61 (alleging that Defendants "deprived Plaintiffs of all economically viable and all reasonable beneficial use of the Commodore Bay property, without full compensation").

Corn II is also inapposite. In that case, the Eleventh Circuit concluded that the cause of action for a writ of mandamus was not identical to that for a taking. The Court wrote:

> The state court in [the mandamus action] held that the City was estopped from re-zoning Corn's property by Corn's actions in reliance on earlier zoning ordinances. In contrast, to maintain an action for a regulatory taking plaintiff must present evidence of a diminution in the value of the property as well as a lack of alternative uses occasioned by the taking.

*Corn II*, 904 F.2d at 587. In no way was the *Corn II* court considering the preclusive effect of a *de novo* action such as *Treister II*.[7]

*Lucas*, too, does not assist Plaintiffs on this issue. In that case the Supreme Court held that regardless of whether a zoning ordinance regulates a "nuisance," a regulation depriving the owner of all economically beneficial use of land may constitute a compensable taking, unless the restriction "inhere[s] in the title itself"—that is, unless the restriction was already in place under the state's law of property and nuisance. *Lucas*, 505 U.S. at —— – ——, 112 S.Ct. at 2901–02. The Supreme Court wrote: "Where the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with." *Lucas*, 505 U.S. at ——, 112 S.Ct. at 2899. We fail to see how *Lucas* differentiates Florida just compensation claims from federal just compensation claims as applied to the facts of this case.

### 2. Preservation of a Federal Forum

As discussed above, generally speaking, "issues actually litigated in a state court proceeding are entitled to the same preclusive effect in a subsequent federal § 1983 suit as they enjoy in the courts of the State where the judgment was rendered." *Migra*, 465 U.S. at 83, 104 S.Ct. at 897. It is also true that under *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), a Plaintiff who has had his case remitted to the state courts may reserve the right to litigate his federal claims in federal court.[8] The

---

7. Though Plaintiffs purport to rely upon *Corn II* and *Lake Lucerne* to establish that this Court is not bound by *Treister II*, the thrust of Plaintiffs arguments appears to be that *Treister II* was incorrectly decided. However, even if the circuit court improvidently entered final judgment, this court may not review the merits of *Treister II* or *Treister III*. As discussed earlier, if Plaintiffs believed the state circuit court misapplied *res judicata* in *Treister I*, its assignment of error should properly have been brought to the Florida district court of appeals. For this reason Plaintiff's reference to *Moviematic Indus. v. Board of County Commissioners*, 349 So.2d 667, 671 (Fla. 3d DCA 1977) is unavailing. *Moviematic* discusses the standard for upholding zoning on direct appeal of an order denying a petition for writ of certiorari, not a *de novo* action such as *Treister II*.

8. Plaintiffs also rely upon the Eleventh Circuit's recent opinion in *Fields* in support of their assertion that they reserved the federal forum. *Fields*, however, is inapplicable. *Fields* addresses a situation where, because of the inadequate state compensation prong of the *Williamson County* ripeness test, a Plaintiff must first proceed in the state courts and seek all compensation available there. In *Fields* the Eleventh Circuit held that despite the language in *English* stating that a Plaintiff seeking to preserve the federal forum must initiate suit in federal court, an initial filing is unnecessary "when two prerequisites have been met. First, the would be federal court litigant must be precluded from filing his or her suit in federal court in the first instance, and second, the would-be federal court litigant must be in state court 'involuntarily.'" *Fields*, 953 F.2d at 1306. The *Fields* Court observed that

Eleventh Circuit has recently discussed the preservation of a federal forum under *England:*

> In order to guarantee litigants entitled to a federal forum an opportunity to litigate their claims in federal court, the *England* court articulated a three-step procedure through which the right to a federal court hearing could be preserved: (1) the litigant must first file in federal court, (2) the federal court will stay the federal proceedings to allow the state courts to consider any state law questions, and (3) the litigant must inform the state court that, if necessary he intends to pursue any federal constitutional claims in federal court following the conclusion of the state court proceedings.

*Fields,* 953 F.2d at 1304–05. Moreover,

> In the event that a § 1983 plaintiff's federal and state-law claims are sufficiently intertwined that the federal court abstains from passing on the federal claims without first allowing the state court to address the state-law issues, the plaintiff can preserve his right to a federal forum for his federal claims by informing the state court of his intention to return to federal court on his federal claims following litigation of his state claims in state court.

*Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 85 n. 7, 104 S.Ct. 892, 898 n. 7, 79 L.Ed.2d 56 (1984) (citing *England* ).

■ In this case, however, an *England* reservation was not available, and, even if it was available, it was not properly made. As discussed earlier, *see supra* note 2, Judge Spellman abstained pursuant to *Younger* and *Pennzoil.* To the extent that this case is properly thought of as one involving *Younger* abstention, it is clear that no reservation was possible. *See Temple of Lost Sheep, Inc. v. Abrams,* 930 F.2d 178, 183 (2d Cir.), *cert. denied,* 502 U.S. 866, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991); *Beltran v. State,* 871 F.2d 777, 783 n. 8 (9th Cir.1988). However, as *Younger* abstention "requires dismissal of the complaint," *Beltran,* 871 F.2d at 782 (quoting *Gibson v. Berryhill,* 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973)), among other things, and the district court did not so dismiss the [First] Amended Complaint, we consider Plaintiffs' claim of reservation. *See Ivy Club v. Edwards,* 943 F.2d 270, 277–280 (3d Cir.1991) ("[T]he most important consequence of district court abstention pursuant to *Younger* rather than [*Railroad Commission of Texas v.*] *Pullman* [*Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971] [ (1941) ] is that although a decision under *Younger* terminates the federal litigation . . ., abstention under *Pullman* merely postpones the exercise of federal jurisdiction.), *cert. denied,* 503 U.S. 914, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992).

Second, despite the removal of the case to federal court, the jurisdiction of the federal courts was not properly invoked with regard to the just compensation claim, *see Eide,* 908 F.2d at 720–21, the due process takings claim, *see Eide,* 908 F.2d at 721, and the equal protection claim, *see Executive 100,* at 922 F.2d at 724, because the finality requirement for ripeness had not been met.[9] When

these conditions are met "when federal law imposes an exhaustion requirement upon a would-be federal court litigant as a precondition to bringing his federal claim in federal court." *Id.*

This case, however, is not one in which an exhaustion requirement applied at the time of the alleged taking. As stated by the Ninth Circuit, "the appropriate point for determining the adequacy of state compensation procedures is at the time of the alleged taking." *See Hoehne v. County of San Benito,* 870 F.2d 529, 534 (9th Cir. 1989). "Because no remedy in inverse condemnation existed at the time of the alleged taking in this case," that Court held, the aggrieved landowners were not "required to pursue state compensation procedures before filing for federal court review." *Id.; see Del Monte Dunes at Monterey, Ltd. v. City of Monterey,* 920 F.2d 1496,

1507 (9th Cir.1990). There is no dispute that the alleged taking occurred prior to the *First English* decision, at a time that Florida clearly denied compensation for a taking by zoning. *See National Bulk Carriers. See Corn I,* 816 F.2d at 1517. *See Grady v. Lee County,* 458 So.2d 1211, 1212–13 (Fla. 2d DCA 1984); *Pinellas County v. Ashley,* 464 So.2d 176, 177 (Fla. 2d DCA), *review denied,* 475 So.2d 693 (Fla.1985); *Lee County v. Morales,* 557 So.2d 652, 656 (Fla. 2d DCA), *review denied,* 564 So.2d 1086 (Fla.1990).

**9.** As discussed earlier in the text, the adequacy-of-state compensation prong is decided at the time of the alleged taking, and is satisfied in this case. The ripeness requirement for an applied arbitrary and capricious due process claim "depends upon the nature of the claim," *Eide,* 908

Defendants removed the cause to federal court, Plaintiffs' petition for writ of certiorari was pending before the Appellate Division, Circuit Court, and the zoning decision was not final. *See Corn II*, 904 F.2d at 587. Accordingly, at the time federal jurisdiction was initially invoked, no federal just compensation claim (nor due process takings, nor equal protection claim) was justiciable. "Where a [party] *properly* invokes federal-court jurisdiction in the first instance on a federal claim, the federal court has a duty to accept that jurisdiction." *Allen*, 449 U.S. at 101 n. 17, 101 S.Ct. at 418 n. 17 (emphasis added). It follows that no such duty arises where, as here, federal court jurisdiction did not properly lie. Accordingly, it does not appear that *England* should properly apply in this case.

Even if *England* could apply here—and, as stated above, we do not believe it can— Plaintiffs did not satisfy the requirements imposed by *England* to reserve a federal forum for the federal claim.[10] Plaintiffs arguments fail under *England* because Plaintiffs did not reserve their right to return to the federal forum. To do so, Plaintiffs needed to inform the state court of their intent to litigate their federal claim in federal court without regard to the outcome of the state case. *See England*, 375 U.S. at 421–22, 84 S.Ct. at 467–68; *Fields*, 953 F.2d at 1304–05. ("The litigant must inform the state court that, if necessary, he intends to pursue any federal constitutional claims in federal court following the conclusion of the state court proceedings."). No such reservation was made by either party. Plaintiffs have cited us no effective reservation, and our review of

the record reveals that none occurred. Plaintiffs sole argument on this point is that by filing a notice with the District Court of Appeals they preserved their right to a federal forum. *See* Pls.Rep.Mem. at 6 & Appendix 3 (DE 119). This notice, however, filed after judgment was entered by the state courts, is insufficient. *Cf. Griffin v. State*, 760 F.2d 359, 360 n. 1 (1st Cir.1985) ("Section 1983 does not override state preclusion law by allowing plaintiffs to first proceed to judgment in state courts and then turn to federal courts for adjudication of federal claims."), *cert. denied*, 474 U.S. 845, 106 S.Ct. 134, 88 L.Ed.2d 111 (1985).

In sum we find that Florida preclusion principles bar maintenance of a federal just compensation claim, that Plaintiffs could not reserve the federal forum, and, indeed, that even if Plaintiffs could preserve a federal forum, they did not take appropriate steps to do so. Accordingly, we conclude that the state law judgment is preclusive, and summary judgment as to Plaintiffs' just compensation claim must be and is GRANTED.

### Due process takings claim

■ The Eleventh Circuit has defined a due process takings claim as "a claim that the application of the regulation goes so far and destroys the value of his or her property to such an extent that it has the same effect as a taking by eminent domain. Such an application would be an invalid exercise of the police power." *Eide*, 908 F.2d at 721. The remedy for a successful due process takings claim is not compensation for the value taken as with a just compensation claim, but invalidation of the regulation caus-

---

F.2d at 726. As Plaintiffs have conceded that this claim is properly barred, we need not decide the issue.

**10.** We have found no case specifically addressing *England* in the procedural context of this case. It appears, however, that even though the complaint filed by Plaintiffs in state court contained constitutional claims, *see* Complaint for Injunctive Relief at ¶¶ 19–20 (DE 1), this fact does not preclude an otherwise available *England* reservation. In *England*, the Supreme Court wrote that "[o]nce issue has been joined in the federal court, no party is entitled to insist, over another's objection, upon a binding state court determination of the federal question." *England*, 375 U.S.

at 422 n. 13, 84 S.Ct. at 468 n. 13; *see Ganz v. City of Belvedere*, 739 F.Supp. 507, 509–10 (N.D.Cal.1990). *But see Allen*, 449 U.S. at 101 n. 17, 101 S.Ct. at 418 n. 17 ("Where a plaintiff properly invokes federal-court jurisdiction *in the first instance* on a federal claim, the federal court has a duty to accept that jurisdiction.") (emphasis added); *Fields*, 953 F.2d at 1304–05 (stating that under *England* "the litigant must first file in federal court"). However, we have not found any case where a defendant invoked the jurisdiction of the federal court and the plaintiff, having initiated a federal claim in state court, was permitted to preserve the federal forum with an *England* reservation. Because we decide that Plaintiff has not satisfied *England*, we do not resolve this question.

ing the taking and, "perhaps, actual damages...." *Id.*

For the reasons expressed in the discussion of the just compensation claim,[11] we hold that the grant of summary judgment in *Treister II* precludes, on *res judicata* and issue preclusion grounds, a due process takings claim. In *Albrecht v. State,* the Florida Supreme Court held that merely because an action is authorized by a statute does not determine that no taking exists. *Albrecht,* 444 So.2d at 8; *see National Bulk Carriers,* 450 So.2d at 216. However, if the locality's action is "confiscatory and constitutes a taking without just compensation," the Court has held, "the action of the board must be stricken. A denial of rezoning cannot be both reasonable and confiscatory." *National Bulk Carriers,* 450 So.2d at 216. Given that the standard expressed in *Eide* is similar to that of *National Bulk Carriers,* as explicated by the Eleventh Circuit in *Corn I,* and given the Circuit Court's refusal to grant declaratory or injunctive relief available under *National Bulk Carriers,* we find that Plaintiffs' due process takings claim is barred by *res judicata* and issue preclusion. Accordingly, Defendants' motion for summary judgment as to the due process takings claim is GRANTED.

*Arbitrary and capricious due process claim*

Plaintiff has conceded that the state court proceedings are *res judicata* on an "arbitrary and capricious" claim, and that therefore they are barred from asserting that type of due process claim. *See* Tr. [Federal Court] H'rg, at 32, 54 (Dec. 9, 1992) (DE 124). Accordingly, Defendant's motion for summary judgment as to an arbitrary and capricious due process claim is GRANTED.

*Equal Protection claim*

We believe it inappropriate at this time to consider Defendants' motion with regard to the equal protection claim. The briefs have not addressed how the elements of such a claim compare to the elements of those claims before the state courts, nor have they identified whether litigation of claim below necessarily involved litigation of the equal protection claim herein. Accordingly, we will not consider this claim at this time, and Defendants' motion to dismiss or for summary judgment is DENIED WITHOUT PREJUDICE as to the equal protection claim.[12]

*V. Plaintiffs' Motion for Leave to Amend*

At oral argument, counsel for Plaintiffs represented that the only difference between the [First] Amended Complaint and the proposed Second Amended Complaint is one of form, the benefit of the proposed amended complaint being its clarity and the conformity of the constitutional claims to those laid out in *Eide* and *Executive 100. See* Tr., at 54. As an initial matter, we have construed

---

11. Judge Paine's opinion in *Corn III,* 771 F.Supp. 1557 (S.D.Fla.1991) may suggest that there is no practical difference between a due process takings claim and a just compensation claim. *See id.* at 1566 n. 5.

12. Defendants suggest that Plaintiffs attempt to raise a claim for federal antitrust in the [First] Amended Complaint, and move to dismiss it. First, it is altogether unclear to the Court that the [First] Amended Complaint contemplates raising an antitrust claim. The only reference to the Sherman Act, *see* Amended Complaint at ¶ 42, states that Plaintiffs themselves feared committing an antitrust violation. It appears that anticompetitiveness is alleged chiefly to show that the Defendants' actions were not disinterested and violative of due process. Second, there are insufficient facts alleged to support a claim under Section 1 or 2 of the Sherman Act. *See Crane & Shovel Sales Corp. v. Bucyrus–Erie Co.,* 854 F.2d 802, 805 (6th Cir.1988); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev.*

*Corp.,* 711 F.2d 989, 995 (11th Cir.1983); *T. Harris Young & Assocs. v. Marquette Electronics, Inc.,* 931 F.2d 816, 823 (11th Cir.), *cert. denied,* 502 U.S. 1013, 112 S.Ct. 658, 116 L.Ed.2d 749 (1991). Furthermore, it is highly doubtful under *City of Columbia v. Omni Outdoor Advertising, Inc.,* 499 U.S. 365, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991) that an antitrust action against the City could be maintained on these facts. In addition, it appears that the Local Government Antitrust Act of 1984, as amended, codified at 15 U.S.C. §§ 34–36, exempts Defendants from paying damages for any violation of the antitrust laws. *See Cohn v. Bond,* 953 F.2d 154, 157–59 (4th Cir.1991), *cert. denied,* — U.S. ——, 112 S.Ct. 3057, 120 L.Ed.2d 922 (1992). Third, in neither their response, nor their surreply nor in their numerous supplemental pleadings did Plaintiffs rebut Defendants assertions that no antitrust claim may be maintained. Accordingly, we conclude that that Plaintiffs have abandoned this basis of their action, if it was ever in fact asserted.

Plaintiffs' [First] Amended Complaint to make out a claim under each of the constitutional grounds discussed in *Eide*. Second, given Plaintiffs' rationale, and Defendants avowed ability to discern the claims as they stand, we see no reason at this time to further muddle this complicated record by allowing a new complaint at this stage. Accordingly, Plaintiffs' motion to amend is DENIED.

### VI. Conclusion

Defendants' motion for summary judgment is GRANTED as to Plaintiffs' claims for a taking without just compensation, a due process taking, and an arbitrary and capricious due process claim. Defendants' motion for summary judgment is DENIED WITHOUT PREJUDICE as to Plaintiffs' equal protection claim. Plaintiffs' motion to amend is DENIED. Defendants are granted leave to renew their motion for summary judgment or dismissal as to the equal protection claim, on preclusion or other grounds. To the extent that Defendants wish to do so, they are directed to file such motion within 20 days of the date of this Order. In addition, this cause is hereby set for status conference before the undersigned on October 5, 1992 at 9:00 a.m. Finally, the Clerk of Court is directed to reopen this case for administrative purposes.

DONE AND ORDERED.