### Jack E. FIELDS, Mary S. Fields, Martin Amundson, et al., Plaintiffs–Appellants,

v.

### SARASOTA MANATEE AIRPORT AUTHORITY, Defendant–Appellee.

No. 91–3118.

United States Court of Appeals, Eleventh Circuit.

Feb. 18, 1992.

S.W. Moore, Alan E. DeSerio, Brigham, Moore, Gaylord, Wilson, Ulmer, Schuster & Sachs, Tampa, Fla., and Gideon Kanner, Crosby, Heafey, Roach & May, Los Angeles, Cal., for plaintiffs-appellants.

A. Lamar Matthews, Jr., Steven D. Hutton, Matthews, Hutton & Eastmore, P.A., Sarasota, Fla., for defendant-appellee.

Before JOHNSON *, CLARKE * and PECK **, Senior Circuit Judges.

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable John W. Peck, Senior U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

JOHNSON, Senior Circuit Judge:

This case arises on appeal following the district court's granting summary judgment to appellee Sarasota–Manatee Airport Authority based on the application of res judicata and collateral estoppel principles. After a careful review, we conclude that the district court failed to analyze properly this issue. The appellants could have avoided the operation of res judicata and collateral estoppel in this case. However, because the appellants have failed to avail themselves of the procedures necessary for the preservation of their federal law takings claim, we affirm the lower court's entry of summary judgment in this case.

## I. STATEMENT OF THE CASE

### A. *Background Facts*

The appellants ("homeowners") are a group of homeowners who reside near the Tampa airport. Since the mid–1970s, large commercial airliners have flown over the homeowners' properties at low altitudes during takeoffs and landings. The resulting noise and pollution have depressed the values of their homes. Although the homeowners' properties have increased in value over the years, the rate of this increase has been significantly less than in comparable Sarasota neighborhoods that are not adjacent to the metropolitan airport.

### B. *Procedural History*

In 1984, the homeowners first brought suit in the Manatee County Circuit Court. In their second amended complaint, the homeowners raised Florida state law issues regarding inverse condemnation proceedings for an avigational right of way. Homeowners did not raise claims under the Fourteenth and Fifth Amendments of the United States Constitution in their state court complaint, nor did homeowners inform the state court that they intended to pursue any potential federal claims in fed-

eral court if they failed to obtain satisfactory compensation in state court. The Manatee County trial court held that the homeowners were not entitled to compensation for the overflights under Florida law. The Second District Court of Appeal affirmed the trial court's holding. *Fields v. Sarasota–Manatee Airport Authority*, 512 So.2d 961, 965 (Fla. 2d Dist.Ct.App. 1987), *rev. denied*, 520 So.2d 584 (Fla.1988). On May 17, 1989, homeowners filed suit in federal district court under section 1983 of Title 42, alleging that the overflights constituted a taking of their property by the airport authority without just compensation. On January 14, 1991, in the ruling presented for review, the district court granted the airport authority's motion for summary judgment. *Fields v. Sarasota–Manatee Airport Auth.*, 755 F.Supp. 377, 382 (M.D.Fla.1991). The district court held that, pursuant to Florida law on res judicata, the homeowners' federal law claims were barred because of the prior state court action. *Id.* at 380–81.

### C. *Standard of Review*

■ The district court's legal conclusion that Florida res judicata principles preclude the homeowners' federal takings claim under section 1983 is subject to plenary review. *Adams v. Sewell*, 946 F.2d 757, 762 (11th Cir.1991).

## II. QUESTION PRESENTED

This Court must decide whether the district court erred in concluding that Florida collateral estoppel and res judicata principles precluded the federal courts from hearing the homeowners' federal law takings claim.

## III. ANALYSIS

■ This case presents a jurisdictional problem created by the interplay between 28 U.S.C.A. § 1738[1] and the Supreme

---

**1.** Section 1738 provides:

[The Acts of the legislature of any State, Territory, or Possession of the United States or] ... records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the

United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

In essence, Section 1738 requires federal courts to give the same preclusive effect to state court

Court's holding in *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnston City*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (*Williamson County*). On the one hand, *Williamson County* requires potential federal court plaintiffs to pursue any available state court remedies that might lead to just compensation before bringing suit in federal court under section 1983 for claims arising under the Fourteenth and Fifth Amendments for the taking of property without just compensation. *Id.* at 194, 105 S.Ct. at 3120. On the other hand, if a litigant brings a takings claim under the relevant state procedure, he runs the risk of being barred from returning to federal court; most state courts recognize res judicata and collateral estoppel doctrines that would require a state court litigant to raise his federal constitutional claims with the state claims, on pain of merger and bar of such federal claims in any attempted future proceeding. Thus, when a would-be federal court litigant ventures to state court to exhaust any potential avenues of obtaining compensation, in order to establish that a taking "without just compensation" has actually occurred as required by *Williamson County*, he finds himself forced to raise the federal law takings claim even though he would prefer to reserve the federal claim for resolution in a section 1983 suit brought in federal court.

This Circuit has already resolved this dilemma. *See infra* discussion at 1305–06. In *Jennings v. Caddo Parish School Bd.*, 531 F.2d 1331 (5th Cir.), *cert. denied*, 429 U.S. 897, 97 S.Ct. 260, 50 L.Ed.2d 180 (1976), the Court held that one need only "reserve her constitutional claims for subsequent litigation in federal court" by "making on the state record a reservation as to the disposition of the entire case by the state courts" to preserve access to a federal forum. *Id.* at 1332. The application of *Jennings* to the present dispute provides the central issue in this appeal.

### A. Federal Takings Claims May be Reserved for a Federal Forum

■ The *Williamson County* Court held that if state procedures exist which might provide compensation for an alleged taking of property without just compensation, then a would-be section 1983 litigant could not yet claim that he had been denied "just compensation until he exhausted any such avenues of relief." *Id.* at 186, 194–97, 105 S.Ct. at 3120–22. As the Court explained, "[i]f the government has provided an adequate process for obtaining compensation, and if resort to that process 'yield[s] just compensation,' then the property owner 'has no claim against the Government' for a taking." *Id.* at 194–95, 105 S.Ct. at 3121. Thus, a takings claim is not ripe until all avenues of compensation at the state level have been exhausted. *Id.* at 194–95, 105 S.Ct. at 3121. However, the *Williamson County* Court failed to address the question of whether the exhaustion of potential state remedies would also require plaintiffs with takings clause claims to litigate their federal takings clause claims in state court.

■ At first blush, the case law suggests that all takings claims (both federal and state) must be brought in a single state court action concurrently with any state claims which might lead to obtaining "just compensation." The Supreme Court has held that pursuant to 28 U.S.C.A. § 1738, traditional res judicata and collateral estoppel principles apply to section 1983 suits. *Allen v. McCurry*, 449 U.S. 90, 101, 103–04, 101 S.Ct. 411, 419, 66 L.Ed.2d 308 (1980). Thus, if a state court litigant raises his federal claims in state court, he may not relitigate them in federal court in a section 1983 action. *Id.* From this premise, it would seem to follow that if the litigant failed to raise his federal constitutional claims in the state court proceeding, res judicata merger and bar principles would prevent him from raising them for the first time in federal court. However, the *Allen* court declined to make a defini-

judgments that the issuing courts would afford, thus constituting the federal court analog to Article IV's "full faith and credit" clause which

requires state courts to give the same preclusive effect to judgments of another state's courts as the issuing court would.

tive ruling on this issue. *Id.* at 94 n. 5, 101 S.Ct. at 415 n. 5.

In *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (*Migra*), the Supreme Court took up the issue left undecided in *Allen; to wit*, whether section 1738 would preclude the litigation of federal law claims in federal court if the would-be federal court litigant first brought a state law action in state court and that action, under the merger and bar rules of the state of the issuing court, would preclude the subsequent filing of the federal claim in that state's courts. The *Migra* Court held that state law merger and bar rules preclude a section 1983 suit if (1) the would-be federal court litigant voluntarily filed the state court action in state court, and (2) the would-be federal court litigant could have raised his federal law issues in the state court complaint. *Migra*, 465 U.S. at 84–85, 104 S.Ct. at 898. The *Migra* Court observed that "[s]ection 1983 ... does not override state preclusion law and guarantee petitioner a right to proceed to judgment in state court on her state claims and then turn to federal court for adjudication of her federal claims." *Id.* at 85, 104 S.Ct. at 898.

Thus, a straightforward application of *Allen* and *Migra* seems to preclude the action at issue in the case at bar.[2] However, the *Migra* Court cautioned that its holding was based on the voluntary nature of the state court action directly at issue; Migra voluntarily filed his first action in state court, even though he could have first filed a section 1983 action in federal court. *Id.* at 85 n. 7, 104 S.Ct. at 898 n. 7. Justice Blackmun, writing for a majority of the Court, carefully distinguished the situation presented when a federal court litigant is involuntarily forced into state courts. *Id.* Moreover, the *Migra* court expressly referred to *England v. Louisiana State Bd. of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964) (holding that a federal court litigant forced into state court because of *Pullman* abstention may reserve the right to return to federal court), and noted that, in abstention cases, "the plaintiff can preserve his right to a federal forum for his federal claims by informing the state court of his intention to return to federal court on his federal claims following litigation of his state claims in state court." *Id.*

The operation of *Williamson County*, much like the abstention doctrine at issue in *England*, forces would-be federal court litigants to first litigate their claims in state court. Thus, this Court must decide whether the interplay of *England* and *Williamson County* creates an exception to the operation of section 1738. In resolving this question, we must first determine the scope of *England* and its application, if any, to the case at bar.

In *England*, the Supreme Court recognized that if a litigant had the option of going into state or federal court with a constitutional claim under section 1983, federal abstention doctrines should not force the litigant to pursue the federal law claim in state court. *Id.* at 415, 84 S.Ct. at 465. In order to guarantee litigants entitled to a federal forum an opportunity to litigate their claims in federal court, the *England* court articulated a three-step procedure through which the right to a federal court hearing could be preserved: (1) the litigant must first file in federal court, (2) the federal court will stay the federal proceedings to allow the state courts to consider any state law questions,[3] and (3) the

---

**2.** The *Allen* court did not hold that this would necessarily be the case, 449 U.S. at 94 n. 5, 101 S.Ct. at 415 n. 5, and the *Migra* court specifically limited the holding to situations where the would-be federal plaintiff voluntarily litigated a similar claim in the state court, *Migra*, 465 U.S. at 85 n. 7, 104 S.Ct. at 898 n. 7. Thus, a contrary rule could apply to cases where plaintiffs did not *voluntarily* file in state court nor present any federal law claims to the state courts for decision.

**3.** Abstention in *England* cases often occurs in order to allow the state courts to construe an ambiguous statute that might prove constitutionally infirm, depending on how it is construed. *See Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 498–502, 61 S.Ct. 643, 644–46, 85 L.Ed. 971 (1941).

litigant must inform the state court that, if necessary, he intends to pursue any federal constitutional claims in federal court following the conclusion of the state court proceedings. *Id.* at 417–422, 84 S.Ct. at 466–468. If the litigant follows these steps, then he may return to federal court if the state court proceeding does not adequately resolve the dispute.

■ However, the *England* process, strictly speaking, is not applicable to a takings clause claim because a litigant cannot first file in federal district court. Under *Williamson County,* a takings clause claim is not ripe until the litigant has exhausted any potential means of obtaining compensation from the state, including judicial proceedings. The lack of ripeness deprives the federal courts of subject matter jurisdiction over a takings clause claim prior to the completion of the requisite state court proceedings. *Eide v. Sarasota County,* 895 F.2d 1326, 1328–29 (11th Cir. 1990), *opinion withdrawn on rehearing on other grounds,* 908 F.2d 716 (11th Cir. 1990) (substituted opinion). Thus, a takings claim litigant cannot comply with the first step of the *England* process.

Nevertheless, a would-be federal court litigant with a federal takings claim may preserve access to a federal forum despite being unable to rely on *England.* This Circuit has read *England* broadly, and has extended it by allowing would-be federal plaintiffs to reserve their right to a federal court hearing for some federal constitutional claims merely by making a formal reservation in the state court proceedings of their intent to bring their federal claims in a federal court should the state court, applying state law, find adversely to them. *Jennings v. Caddo Parish School Bd.,* 531 F.2d 1331, 1332 (5th Cir.), *cert. denied,* 429 U.S. 897, 97 S.Ct. 260, 50 L.Ed.2d 180 (1976). *Jennings* effectively abolishes the first requirement for an *England* reservation—filing in the first instance in federal court. Thus, it appears that the *Jennings* panel misread *England,* effectively rewriting the requirements for a valid *England* reservation.

However, even if this panel believes that *Jennings* unduly broadened the *England* exception to general merger and bar rules, it is too late in the day for this panel to revisit the question.[4] *See United States v. Machado,* 804 F.2d 1537, 1543 (11th Cir. 1986).

The Eleventh Circuit has not yet had occasion to consider the continuing validity of *Jennings* in light of *Allen* and *Migra.* We are, of course, reluctant to overrule *Jennings;* a panel of this Court should not lightly undertake such action. Fortunately, we may avoid the hard choice of not following a prior panel's decision on the grounds that it is inconsistent with later-in-time Supreme Court precedents. In other words, we believe that *Jennings* may be squared with *Allen* and *Migra.*

In a federal takings claim, the doctrine of ripeness requires a would-be federal court litigant to first establish that compensation is not forthcoming from the state government. *Williamson County,* 473 U.S. at

---

4. *Jennings* came down in 1976, and was consistently followed in this Circuit's predecessor. *Cornwell v. Ferguson,* 545 F.2d 1022, 1024 (5th Cir.1977) (citing with approval the *Jennings* rule that a reservation of federal issues alone is sufficient to preserve a litigant's right to return to federal court); *Palmer v. Jackson,* 617 F.2d 424, 432 (5th Cir.1980) (citing with approval the *Jennings* rule). Moreover, Unit B of the Fifth Circuit and the new Fifth Circuit have both adhered to the *Jennings* rule even after *Allen v. McCurry* came down. *Southern Jam, Inc. v. Robinson,* 675 F.2d 94, 96–97 n. 5 (5th Cir. Unit B 1982) (citing *Palmer* for the proposition that a litigant may preserve access to a federal court for review of federal constitutional claims in appropriate circumstances; *Palmer* relied solely on *Jennings* for this proposition); *Holmes v.*

*Jones,* 738 F.2d 711, 714 (5th Cir.1984) (court observes that under *Jennings,* an "unequivocal reservation on the state record of his intent to litigate his federal claims in federal court" would have preserved plaintiff's access to a federal forum).

We note, however, that a panel of the new Fifth Circuit, subsequent to *Holmes,* has severely questioned the continuing validity of *Jennings. Lewis v. East Feliciana Parish School Bd.,* 820 F.2d 143, 146 n. 1 (5th Cir.1987). Ultimately, the *Lewis* court declined to decide the issue of whether a *Jennings* reservation could preserve a litigant's right to a federal forum for federal law claims because Lewis did not make his *Jennings* reservation prior to the state court's decision of Lewis' federal claims.

195–97, 105 S.Ct. at 3121–22. Plaintiffs must first pursue their state law remedies (if any); thus recourse to the state proceedings by a would-be federal court plaintiff is, in a sense, "involuntary." The *Migra* Court made clear that *England* could apply when a litigant with a federal constitutional claim is involuntarily in state court. *Migra,* 465 U.S. at 85 n. 7, 104 S.Ct. at 898 n. 7. Bringing these observations to bear on *Jennings,* we find that a *Jennings* reservation may be effective only in circumstances where it may reasonably be said that the litigant "involuntarily" pursued state court proceedings. Limiting *Jennings* in this fashion brings *Jennings* within the ambit of footnote 7 of *Migra.*

 Therefore, for purposes of applying *Migra,* we hold that would-be federal court litigants who are forced to pursue state court proceedings in order to satisfy exhaustion requirements imposed by federal law incident to a takings clause claim are "involuntarily" in the state courts, and therefore qualify for the exception to generally applicable res judicata principles.[5] However, we also hold that a *Jennings* reservation is effective only when two prerequisites have been met. First, the would-be federal court litigant must be precluded from filing his or her suit in federal court in the first instance, *see, Migra,* 465 U.S. at 84–85, 104 S.Ct. at 898, and second, the would-be federal court litigant must be in state court "involuntarily," *see id.* at 85 n. 7, 104 S.Ct. at 898 n. 7. This Court can identify only two circumstances in which both of these criteria are met: (1) when a defendant in a non-removable state court action wishes to pursue a federal law counterclaim, and (2) when federal law imposes an exhaustion requirement upon a would-be federal court litigant as a precondition of bringing his federal claim in federal court.[6] By operation of *Williamson County,* the federal takings claim at issue in this case falls into this second category.[7]

In conclusion, although this Court is unsure of whether we would reach the same

5. This conclusion is consistent with the Supreme Court's approach to the problem of mandatory exhaustion requirements in the context of Title VII claims. The Court has held that section 1738 would preclude a would-be Title VII litigant from both appealing the decision of a state equal employment agency and also, subsequent to the state court appeal, proceeding to judgment in a federal action brought under Title VII if the operation of state law merger and bar rules would bar the action. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 468–78, 102 S.Ct. 1883, 1890–96, 72 L.Ed.2d 262 (1982). The *Kremer* Court observed that, although Congress required potential Title VII litigants to pursue any remedies available from state equal employment opportunity agencies, Congress did not require appeals of such agencies' decisions. *See id.* at 478 and 478 n. 19, 102 S.Ct. at 1896 n. 19.

Analogously, a federal takings clause claim may not be brought until any processes that might yield "just compensation" have been exhausted; a federal takings clause claim may not be considered until the last avenue of relief available from the state government has been exhausted. *Williamson County,* 473 U.S. at 194–95, 105 S.Ct. at 3120–21. Thus, as in *Kremer,* a would-be federal court litigant with a takings clause claim must take the steps necessary to perfect his federal claim, but taking the requisite steps need not have the unfortunate effect of precluding the claim that the would-be federal court litigant is trying to perfect. The principal distinction between the potential Title VII litigant and the potential takings clause litigant is that the potential takings clause litigant must

preserve his right to raise his federal law claim in federal court through the use of a *Jennings* reservation prior to the time the state court takes the steps necessary to perfect the federal claim by denying compensation for the taking, whereas the potential Title VII litigant may pursue any available state administrative remedies before deciding whether to pursue his employment discrimination claim at the state level (through an appeal of the state agency's decision) or at the federal level (through the EEOC and a Title VII complaint).

6. Of course, if there are other circumstances analogous to the two we have identified that we have failed to expressly mention, involuntary state court litigants in such cases may also make use of a *Jennings* reservation in order to preserve their right to a federal court determination of their federal law claim.

7. Perhaps ironically, *Migra* would preclude the use of a *Jennings* reservation if a case with facts similar to *Jennings* arose today. Ms. Jennings claimed that the Caddo Parish School Board had fired her from a public school teaching position on account of her race. *Jennings,* 531 F.2d at 1331. Jennings wished to appeal the school board's affirmance of her dismissal in the Louisiana state courts, pursuant to Louisiana state law. However, Jennings was not required to exhaust her state law remedies before bringing a section 1983 action. Thus, in a contemporary case raising facts entirely analogous to the facts at issue in *Jennings, Migra* would

result as that reached by the *Jennings* court were the issue before us as a matter of first impression, we will hold ourselves bound by this prior precedent.[8]

### B. Homeowners Failed to Make a Jennings Reservation

█ The discussion, *supra,* makes clear that the district court's entry of summary judgment in this case was proper only if (1) Florida preclusion law would bar the filing of a state court suit raising the federal takings claim, *see* 28 U.S.C.A. § 1738, and (2) the homeowners failed to make a *Jennings* reservation.

### 1. Florida preclusion law, if applied, bars the plaintiffs' federal law claims [9]

The homeowners claimed in district court that they did not raise their federal law claims in state court because they wished to preserve their right to bring a section 1983 suit in federal court if the state procedure did not result in compensation. However, Florida preclusion law, if applied, seems to bar any claim based on a takings clause claim because it was not raised by the homeowners along with their state law claims. *Fields,* 755 F.Supp. at 379.

The question of whether Florida bar and merger rules would preclude a state court suit based on the federal takings clause focuses on whether the state and federal law claims are "similar." *Pumo v. Pumo,* 405 So.2d 224, 226 (Fla. 3rd Dist.Ct.App.), *review denied,* 412 So.2d 469 (Fla.1982). "The Florida doctrine of res judicata bars subsequent litigation where there is (1) identity of the thing sued for, (2) identity of

require that the plaintiff either abandon her state court appeal or include any federal law claims in her state court complaint.

**8.** Despite the Supreme Court's recent emphasis on strictly enforcing section 1738's mandate to give state court proceedings full preclusive effect, the Court has never called into question the continuing validity of *England. See, e.g., Migra,* 465 U.S. at 85 n. 7, 104 S.Ct. at 898 n. 7. We also note that if a *Jennings*–type reservation is not available in section 1983 actions raising takings claims, "plaintiffs could never obtain a hearing on their federal constitutional claims in a federal court." *Henry v. First Nat'l Bank of Clarksdale,* 595 F.2d 291, 298 n. 1 (5th Cir.1979). The *Henry* court drew a distinction between those voluntarily bringing state law claims in a state court action and those involuntarily forced into the state courts for whatever reason. *Id.* We believe that the distinction is a sound one, and, more importantly, one that *Migra* expressly endorses.

The problem, as we see it, is not *Jennings'* creation of a mechanism for ensuring that would-be federal litigants can preserve their federal constitutional claims for resolution in a federal court. Indeed, it would be a very odd result if the federal courts were effectively barred from hearing claims arising under the takings clause, except through Supreme Court review via the writ of certiorari, of state court decisions interpreting the clause. The real question is not whether the state courts are unable to enforce the takings clause—they most assuredly are—rather, the question is whether the citizens of this country are to be barred from ever vindicating a federal constitutional right through the federal court system. This premise seems to go beyond *Allen* and *Migra* and is at present foreclosed in this Circuit by operation of *Jennings.* Thus, our concern about the

wisdom of *Jennings* relates to the *Jennings* Court's ostensible reliance on *England* to reach its result, not to the result itself. Although the result in *Jennings* seems to us to be a reasonable one, we are doubtful that *England* compels it.

**9.** We note that the homeowners did not raise their Fourteenth and Fifth Amendment claims in their state court complaint. Neither the Florida trial court nor the Florida appellate court relied on federal takings cases to decide what the homeowners had to establish in order to show that they were entitled to compensation for the taking. Decision of Florida Circuit Court, at 3–4, *reprinted in* Reply Brief of Appellant, appendix 1; *Fields v. Sarasota–Manatee Airport Auth.,* 512 So.2d at 965 (Fla.2d Dist.Ct. App.1987), *rev. denied,* 520 So.2d 584 (Fla.1988). Thus, the district court's finding that the Florida courts considered and decided the homeowner's federal claim, *Fields,* 755 F.Supp. at 381, was clearly erroneous.

In addition, the district court placed undue reliance on *Fountain v. Metropolitan Atlanta Rapid Transit Authority,* 849 F.2d 1412, 1414 (11th Cir.1988), which applied collateral estoppel to a takings claim. *Fields,* 755 F.Supp. at 380–81. The *Fountain* Court found that the state courts had fully addressed Fountain's federal takings claim. *Fountain,* 849 F.2d at 1414–15. The *Fountain* Court was also silent regarding whether Fountain made a *Jennings* reservation while before the state courts. *Id.* at 1412–16. Thus, *Fountain* is inapposite to the extent that (1) the *Fountain* Court's finding that Fountain's federal law claims had been addressed was a necessary step toward the ultimate result, and (2) Fountain failed to make a *Jennings* reservation of his federal law claims while in state court.

the cause of action, (3) identity of persons and parties to the actions, and (4) identity of the quality or capacity of the person for or against whom the claim is made." *Amey, Inc. v. Gulf Abstract & Title, Inc.,* 758 F.2d 1486, 1509 (11th Cir.), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986). Florida preclusion law defines identical causes of action as causes sharing "similarity of facts essential to both actions." *Id.* at 1510. The facts predicating homeowners' state court action are largely identical to the facts necessary for their federal takings claim action. The airport operations' interference with the homeowners' enjoyment of their property is at the heart of both actions. The only material difference in actions relates to the standard required for a taking to be compensable.

▉▉▉▉ The Florida cause of action required establishing that the homeowners' properties had actually decreased in value. *Fields,* 512 So.2d at 964–65. The federal remedy, on the other hand, required a showing that a difference existed in the market value of the property based on the proximity of the airport. *U.S. v. Causby,* 328 U.S. 256, 261–62, 66 S.Ct. 1062, 1065–66, 90 L.Ed. 1206 (1946). Federal takings law, unlike Florida takings law, requires compensation for decreased utility. *Causby,* 328 U.S. at 261–62, 66 S.Ct. at 1066; *Griggs v. Allegheny County,* 369 U.S. 84, 89–90, 82 S.Ct. 531, 534, 7 L.Ed.2d 585 (1962). *See also Transwestern Pipeline Co. v. O'Brien,* 418 F.2d 15, 21 (5th Cir. 1969) (measure of damages is difference between the market value of the land without the easement and the market value of the land encumbered by the easement).

▉▉▉▉ The precise question before us is whether the presence of an additional element for establishing a compensable taking (an absolute decrease in value) is sufficient to shield the homeowners' federal claim from the application of Florida law merger and bar rules. The district court held that the actions required the homeowners to establish substantially similar facts and that they therefore met Florida's require-

ment for "identity." *Fields,* 755 F.Supp. at 379–80.

The Florida courts seem to allow multiple suits based on the same transaction only if the basic legal theory changes from the first suit to the second. *See e.g., Signo v. Florida Farm Bureau Cas. Ins. Co.,* 454 So.2d 3, 4–6 (Fla. 4th Dist.Ct.App.1984) (second suit attempting to create liability under negligence theory was barred by prior suit alleging a different negligence theory because "the mere changing of the theory on which the plaintiff proceeds does not constitute a distinct and different cause of action obviating the defense of res judicata."). *Cf. Pfeiffer v. Roux Labs., Inc.,* 547 So.2d 1271, 1272–73 (Fla. 1st Dist.Ct.App. 1989) (ERISA and common law of contract are not identical causes of action; plaintiff may bring an ERISA suit after losing a case arising under Florida contract law).

Although this question is a close one, we conclude that the federal takings claim is essentially the same claim as that raised in the Florida law inverse condemnation action for purposes of applying Florida's merger and bar rules. *Cf. Adams v. Sewell,* 946 F.2d 757, 762 (11th Cir.1991) (rejects application of res judicata where actions are entirely unrelated). We are simply unconvinced that the absence in federal takings law of a requirement that a property owner establish an absolute decrease in property value over time changes the nature of the action sufficiently to avoid the operation of Florida's bar and merger rules. Because the underlying legal theory was essentially the same in both proceedings, the district court correctly held that res judicata would bar a second suit based on federal takings law in the Florida courts and, consequently, would also bar such an action in the federal courts by operation of state section 1738. Thus, unless the homeowners made a valid *Jennings* reservation, they are barred from litigating their federal claims in federal court.

### 2. Homeowners failed to make a Jennings reservation

▉▉▉▉ Although this Circuit has expanded a litigant's ability to preserve feder-

al court review of federal constitutional claims, *Jennings*, 531 F.2d at 1322, the homeowners failed to make a *Jennings* reservation while before the Florida state courts.[10] Attempting to silently reserve federal issues by failing to raise them in a state court complaint is clearly insufficient to preserve federal court review of unraised constitutional issues. State law res judicata principles will bar any federal law claims that were neither raised nor reserved under *Jennings* in state court. *Southern Jam, Inc.*, 675 F.2d at 97 n. 5. Because the appellant-homeowners failed to reserve their federal constitutional claims in state court, they are now barred from litigating these claims under principles of res judicata. 28 U.S.C. § 1738. *See also Migra*, 465 U.S. at 80–85, 104 S.Ct. at 895–98; *Allen v. McCurry*, 449 U.S. at 94, 103–04, 101 S.Ct. at 414, 419–20.

## IV. CONCLUSION

*Jennings* and *Migra* dictate that the homeowners' federal law claims are barred by Florida res judicata principles. Because we agree that the entry of summary judgment in this case was proper, we AFFIRM the result reached in the decision of the district court, although we do so on different grounds than those proffered by the district court in its published opinion.

---

**10.** The homeowners' attorney filed in state court seeking relief on state grounds, but never made a *Jennings* reservation on the record or in his filings with the state courts. At oral argument, homeowners' counsel suggested that because he believed Florida state takings law was identical to federal takings law, he neither raised federal claims nor made a *Jennings* reservation at the time he filed his state court action. If a state court litigant with a takings clause claim has any wish to preserve access to a federal forum, then he must make a *Jennings* reservation at the time he files his state law claims in state court. *Jennings* is an exception to well-settled doctrines of res judicata that promote finality and the conservation of scarce judicial resources. Exceptions to traditional merger and bar principles should be strictly construed; we decline to further weaken res judicata and collateral estoppel rules to accommodate state court parties who are taken unawares by changes in state law announced for the first time incident to their case. State court litigants in circumstances similar to the homeowners must either raise both their federal and state law claims in their state court complaint or make a *Jennings* reservation of their federal constitutional claims on the record.