Guetersloh v. State 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00626-CV







M. F. Guetersloh, Jr., Appellant



v.



The State of Texas, The Public Utility Commission, The Texas Water


Commission, The City of Lubbock, and James Miller, Receiver of


the Carlisle Water Supply Company, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 95-07117, HONORABLE JOHN DIETZ, JUDGE PRESIDING







 Appellant, M.F. Guetersloh, Jr., sued the State of Texas, the Public Utility Commission,
the Texas Water Commission, (1) the City of Lubbock, and James Miller, Receiver of the Carlisle Water
Supply Company, appellees, asserting a takings claim under the Fifth and Fourteenth Amendments to the
United States Constitution. The district court granted summary judgment against Guetersloh on the ground
that his federal takings claim was barred by res judicata because the claim could have been brought in his
prior inverse-condemnation suit. In a single point of error, Guetersloh asserts that his federal takings claim
was not ripe until his earlier suit was concluded, so he could not have brought the federal claim in the prior
suit. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND


 Guetersloh was previously the owner and operator of the Carlisle Water Supply Company,
a small water utility that supplied water to a handful of families in the Carlisle community outside of
Lubbock. In 1978 Guetersloh sold the utility, retaining a vendor's lien and deed of trust on the property
as security for a promissory note. In 1983 the new owner allegedly violated an order of the Public Utility
Commission, resulting in the appointment of a receiver to manage the utility's assets. During the
receivership, the owner defaulted on his payments to Guetersloh, who foreclosed on the utility in 1985. 
The State, however, judicially enjoined Guetersloh from entering the property or interfering with the
receiver's right of legal possession. 

 In 1987 the City of Lubbock annexed the Carlisle area and built a new water system,
continuing the receivership of Guetersloh's utility until the new water system was completed and began
providing water services to all the residents of Carlisle. After the customers of Carlisle Water Supply were
transferred to the City of Lubbock, Guetersloh was granted permission to take possession of the utility. 
By that time, however, all the utility's customers were gone and its pipes and workings were badly in need
of repair. At no time did the State pay Guetersloh for any use of or injury to the utility.

 During the time the receiver was operating the utility, Guetersloh filed an inverse-condemnation claim against the City of Lubbock and the receiver in Lubbock County district court, initially
asserting causes of action under the takings clauses of both the Texas Constitution (2) ("the state-law claim")
and the United States Constitution (3) ("the federal-law claim"). The State of Texas, on behalf of the Public
Utility Commission, intervened in the suit. Guetersloh later added the Texas Water Commission as a
defendant. Without comment or explanation, Guetersloh subsequently dropped the federal-law claim from
his suit, leaving only the state-law claim. The district court in Lubbock County granted an interlocutory
summary judgment in favor of all defendants except the Public Utility Commission. The court then
transferred venue in the case to Travis County. The district court in Travis County later rendered a final
summary judgment in favor of the Public Utility Commission; this had the effect of making the interlocutory
summary judgment in favor of the other defendants final also.

 Guetersloh appealed the trial court's judgment rejecting his state-law claim. This Court
affirmed, reasoning that the alleged taking was a valid exercise of state police power, for which no
compensation is required. Guetersloh v. Public Util. Comm'n, No. 3-90-161-CV (Tex. App.Austin
Aug. 14, 1991, writ denied) (not designated for publication). Guetersloh's application for writ of error to
the Texas Supreme Court was denied.

 Guetersloh then filed suit on his federal-law claim in federal district court. Named as
defendants, among others, were the State of Texas, the Public Utility Commission, the Texas Water
Commission, and the receiver. The district court dismissed the claim, ruling that it was barred by the statute
of limitations, res judicata, and the Eleventh Amendment to the U.S. Constitution. The Fifth Circuit Court
of Appeals modified the judgment to hold that Guetersloh's claim was barred solely by the Eleventh
Amendment. Guetersloh v. State of Texas, No. 93-8729 (5th Cir. June 3, 1994) (not designated for
publication), cert. denied, 115 S. Ct. 721 (1995). The U.S. Supreme Court denied Guetersloh's
application for a writ of certiorari.

 Guetersloh then filed the present suit in Travis County district court, reurging his federal-law
claim. The court granted appellees' motion for summary judgment, ruling that Guetersloh's federal-law
claim was barred by res judicata. It is from this judgment that Guetersloh now appeals.


DISCUSSION


 Under the "transactional" approach to res judicata adopted in Texas, a claim is precluded
"if it arises out of the same subject matter of a previous suit and which through the exercise of diligence,
could have been litigated in a prior suit." Barr v. Resolution Trust Corp., 837 S.W.2d 627, 631 (Tex.
1992). In the present case, Guetersloh's federal-law and state-law claims are simply two alternative
theories by which he attempts to recover for the same alleged taking, so there is no issue of whether the
two claims arose out of the same factual transaction. Thus, the dispositive issue here is whether
Guetersloh's federal-law claim could have been litigated in the prior suit in which he pursued his state-law
claim to a final judgment.

 Guetersloh bases his argument against the application of res judicata entirely on his
interpretation of Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172
(1985), where the United States Supreme Court held that "if a State provides an adequate procedure for
seeking just compensation [for a taking], the property owner cannot claim a violation of the [federal] Just
Compensation Clause until it has used the [state] procedure and been denied just compensation." Id. at
195. He asserts that he was precluded from asserting his federal-law claim in his first suit because, under
the holding of Williamson County, that claim was not yet ripe. Guetersloh argues that he was required to
unsuccessfully seek compensation in the state courts under Article I section 17 of the Texas Constitution
before his federal-law claim even existed; that only upon denial of just compensation from the state was
his federal-law claim mature; and that therefore the nonexistent, unripe federal claim could not have been
litigated in his state inverse-condemnation suit. In Guetersloh's view, if he were now precluded by res
judicata from bringing his federal-law claim, the effect would be to deny him altogether a forum in which
to argue the merits of his Fifth Amendment takings claim.

 Facially, Guetersloh's arguments sound appealing. The Supreme Court in Williamson
County held that a plaintiff seeking to assert a federal takings claim under the Fifth Amendment must first
have unsuccessfully sought compensation through the state procedures for doing so. 473 U.S. at 194. 
"The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just
compensation." Id. In the present case, Guetersloh contends that this requirement was not and could not
be met until he pursued his state-law claim in the state courts and was denied relief. Thus, Guetersloh
argues that his federal-law claim was not ripe for determination by the state court at that time, could not
have been brought with his state claim, and, therefore, could not be subject to res judicata. We disagree.

 First, state courts clearly have jurisdiction to resolve takings claims based on federal law. 
Moreover, the Texas Rules of Civil Procedure expressly provide for the simultaneous presentation of
multiple claims, alternative theories, and contingent causes of action:


 RULE 48. ALTERNATIVE CLAIMS FOR RELIEF


 A party may set forth two or more statements of a claim or defense alternatively
or hypothetically, either in one count or defense or in separate counts or defenses. . . .


 RULE 51. JOINDER OF CLAIMS AND REMEDIES


 (a) Joinder of Claims. The plaintiff in his petition . . . may join either as
independent or as alternate claims as many claims either legal or equitable or both as he
may have against an opposing party. . . .


 (b) Joinder of Remedies. Whenever a claim is one heretofore cognizable only
after another claim has been prosecuted to a conclusion, the two claims may be joined in
a single action; but the court shall grant relief in that action only in accordance with the
relative substantive right of the parties. . . .


Tex. R. Civ. P. 48, 51.

 Thus, with limited exceptions not applicable here, under Texas law the mere fact that a
cause of action is contingent on the outcome of another suit does not prevent the two claims from being
raised and litigated simultaneously in the same suit. For example, in Getty Oil Co. v. Insurance Co. of
North America, 845 S.W.2d 794 (Tex. 1992), Getty Oil purchased chemicals from NL Industries, Inc.
under a contract that arguably required NL to obtain insurance on Getty's behalf. An accident involving
the chemicals occurred. After the parties litigated various liability issues favorably to NL, Getty sued NL
for insurance coverage. Getty sought to avoid a res judicata bar by arguing that its insurance claims against
NL did not accrue until judgment in the first suit was rendered resolving the liability issues. Relying on rule
51(b), the supreme court rejected this argument:


 Getty argues that res judicata cannot bar its present claims against NL because
these claims did not accrue until judgment was rendered in the Duncan suit. That is, Getty
had no liability and hence no need for insurance coverage until liability was assigned. The
contingent nature of these claims, however, does not preclude the operation of res judicata. 
We held in Barr that "[a] subsequent suit will be barred if it arises out of the same subject
matter of a previous suit and which, through the exercise of diligence, could have been
litigated in a prior suit." 837 S.W.2d at 631. Getty could have asserted its present claims
in the Duncan suit, with their resolution being contingent on the plaintiffs' claims.


Id. at 799.

 Likewise, in the present case, Guetersloh's federal-law claim was contingent on an
unsuccessful outcome in his state-court suit involving his state-law claim. Under rules 51 and 48 of the
Texas Rules of Civil Procedure and the supreme court's holding in Getty Oil, nothing prevented Guetersloh
from simultaneously raising his federal-law and state-law claims in the same suit. Accordingly, his "not yet
accrued" argument does not provide him an escape from the bar of res judicata.

 Nonetheless, Guetersloh also contends that he has a right to litigate his federal-law claim
in federal court. He argues that, since federal courts will not relitigate a federal-law issue that has already
been tried in state court, a procedure whereby he is required to present both his state-law and his federal-law claims initially in state court would effectively preclude him from ever having his federal-law claim
decided by a federal court.

 Leaving aside the question of the Eleventh Amendment, a plaintiff generally has the right
to have his federal-law claim litigated in a federal court. The United States Supreme Court has recognized
"the primacy of the federal judiciary in deciding questions of federal law." England v. Louisiana State Bd.
of Medical Examiners, 375 U.S. 411, 415-16 (1964). In the present case, however, Guetersloh did not
avail himself of the procedure by which he could have preserved his federal-law claim while proceeding
to litigate his state-law claim in state court. In England, an abstention case, the Supreme Court set forth
a procedure by which would-be federal-law claimants may litigate their state-law claims and still return to
federal district court on their federal-law claims if the results in state court are unfavorable. The court held
that, following federal-court abstention, a plaintiff is not required to litigate his federal claims in the state
court; he has only to inform the state court what his federal claims are, so that the state statute or
requirement can be construed "in light of" those claims. Id. at 420. This "reservation" by the would-be
federal claimant was held to occur in three steps: (1) the litigant first files in federal court; (2) the federal
court abstains and stays the federal proceedings until the state courts resolve all state-law questions; and
(3) the litigant informs the state courts of his intention to return, if necessary, to federal court on his federal
constitutional questions after the state-court proceedings are concluded. Id. at 416-22. When a proper
reservation has been made, the litigant's right to return to the federal courts must in all events be preserved. 
Id. at 421-22. However, if a party is found to have freely sought a binding adjudication of all his claims
in state court, and he has failed to make a proper reservation to the disposition of the entire case by the
state courts, then that party has in effect foregone his right to return to federal court to bring his federal
claim. Id. at 419.

 The Fifth Circuit applied the England procedural requirements broadly in Jennings v.
Caddo Parish School Board, 531 F.2d 1331 (5th Cir. 1976). Although not an abstention case, the court
held that "had appellant wished to reserve her constitutional claims for subsequent litigation in federal court,
she could have done so by making on the state record a reservation to the disposition of the entire case by
the state courts." Id. at 1332. 

 Although England and Jennings were in the contexts of medical licensees and racial
discrimination, respectively, the Eleventh Circuit's decision in Fields v. Sarasota Manatee Airport
Authority, 953 F.2d 1299 (11th Cir. 1992), is squarely on point. Fields resolves the question of how
Williamson County and England work together in the context of a takings case. Fields points out that
the three-step England process is not applicable to a takings clause claim, because Williamson County
ripeness requirements effectively prevent a litigant from first filing in a federal court. Fields, 953 F.2d at
1305. The Fields court held, however, that a "Jennings reservation" (i.e., a reservation not preceded by
federal court abstention) can be made only if the would-be federal court litigant is pursuing state-court
proceedings "involuntarily." Id. at 1306 (construing Migra v. Warren City School Dist. Bd. of Educ., 465
U.S. 75 (1984)). The court held that a litigant is "involuntarily" in state court if one of two prerequisites is
met: (1) the litigant is a defendant in a non-removable state-court action and wishes to pursue a federal
counterclaim, or (2) federal law imposes an exhaustion requirement upon a would-be federal court litigant
as a precondition of bringing his federal claim in federal court. 953 F.2d at 1306. By operation of
Williamson County, federal takings claims satisfy the second prerequisite. Id. Hence, the Fields court
held that, if the appropriate reservation is made in state court,


would-be federal court litigants who are forced to pursue state court proceedings in order
to satisfy exhaustion requirements imposed by federal law incident to a takings clause claim
are "involuntarily" in state courts, and therefore qualify for the exception to generally
applicable res judicata principles.



Id.

 In the present case, Guetersloh was involuntarily in state court, because he was fulfilling the
Williamson County requirements. However, the record does not show that he made or attempted to
make any reservation of his federal-law claim through the procedures outlined above. Thus, although he
could, with the exercise of diligence, have preserved his right to return to federal court to litigate his federal-law claim, he did not do so.



CONCLUSION


 We conclude that Guetersloh's federal-law claim could have been raised in his first state-court suit, thus making res judicata principles applicable. We also conclude that Guetersloh does not come
within an exception to res judicata, because he failed to make a proper reservation of his federal-law claim
for possible litigation in and resolution by a federal court. We overrule Guetersloh's point of error and
affirm the trial court's judgment.



 J. Woodfin Jones, Justice

Before Justices Powers, Jones and B. A. Smith

Affirmed

Filed: September 18, 1996

Publish
1.   The Texas Water Commission has since been converted into the Texas Natural
Resource Conservation Commission. See Act of July 30, 1991, 72d Leg., 1st C.S., ch. 3,
§ 1.085, 1991 Tex. Gen. Laws 4, 42.
2.   "No person's property shall be taken, damaged or destroyed for or applied to public use
without adequate compensation being made, unless by the consent of such person." Tex.
Const. art. I, § 17.
3.   "[N]or shall private property be taken for public use, without just compensation." U.S.
Const. amend V.



gh not an abstention case, the court
held that "had appellant wished to reserve her constitutional claims for subsequent litigation in federal court,
she could have done so by making on the state record a reservation to the disposition of the entire case by
the state courts." Id. at 1332. 

 Although England and Jennings were in the contexts of medical licensees and racial
discrimination, respectively, the Eleventh Circuit's decision in Fields v. Sarasota Manatee Airport
Authority, 953 F.2d 1299 (11th Cir. 1992), is squarely on point. Fields resolves the question of how
Williamson County and England work together in the context of a takings case. Fields points out that
the three-step England process is not applicable to a takings clause claim, because Williamson County
ripeness requirements effectively prevent a litigant from first filing in a federal court. Fields, 953 F.2d at
1305. The Fields court held, however, that a "Jennings reservation" (i.e., a reservation not preceded by
federal court abstention) can be made only if the would-be federal court litigant is pursuing state-court
proceedings "involuntarily." Id. at 1306 (construing Migra v. Warren City School Dist. Bd. of Educ., 465
U.S. 75 (1984)). The court held that a litigant is "involuntarily" in state court if one of two prerequisites is
met: (1) the litigant is a defendant in a non-removable state-court action and wishes to pursue a federal
counterclaim, or (2) federal law imposes an exhaustion requirement upon a would-be federal court litigant
as a precondition of bringing his federal claim in federal court. 953 F.2d at 1306. By operation of
Williamson County, federal takings claims satisfy the second prerequisite. Id. Hence, the Fields court
held that, if the appropriate reservation is made in state court,


would-be federal court litigants who are forced to pursue state court proceedings in order
to satisfy exhaustion requirements imposed by federal law incident to a takings clause claim
are "involuntarily" in state courts, and therefore qualify for the exception to generally
applicable r