[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
01/18/2000
THOMAS K. KAHN
CLERK

_____

No. 98-3337

_____

D.C. Docket No. 96-1223-CIV-ORL-18

JAMES R. SABOFF,
KATHY R. SABOFF,

                                        Plaintiffs-Appellees,

versus

ST. JOHN'S RIVER WATER
MANAGEMENT DISTRICT,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 18, 2000)**

Before DUBINA, Circuit Judge, KRAVITCH, Senior Circuit Judge, and
NESBITT*, Senior District Judge.

NESBITT, Senior District Judge:

_____

*Honorable Lenore C. Nesbitt, Senior U.S. District Judge for the
 Southern District of Florida, sitting by designation.

The Defendant St. John's River Water Management District appeals from the district court's denial of its motion for summary judgment on res judicata grounds. For the reasons set forth below, we reverse.

## I.    Procedural Background

In 1991, Plaintiff/Appellees James and Kathy Saboff ("the Saboffs"), landowners in a Seminole County, Florida subdivision, filed suit against Defendant/Appellant St. John's River Water Management District ("the District") in Florida state court for inverse condemnation, procedural and substantive due process violations, and declaratory relief, under the Florida Constitution, as well as for federal substantive due process and equal protection violations. The District removed the case to federal court on the basis of federal question jurisdiction. After the District moved to dismiss the Saboffs' federal substantive due process and equal protection claims as unripe, the Saboffs voluntarily dismissed the federal claims. Subsequent to remand, the state circuit court dismissed the Saboffs' claims for failure to state a cause of action. On appeal to Florida's Fifth District Court of Appeals, that court's decision was affirmed. The Saboffs' request for a rehearing *en banc* was denied on October 23, 1996.

On November 14, 1996, the Saboffs filed a complaint alleging federal substantive due process and federal equal protection claims, along with a federal takings claim, in the District Court for the Middle District of Florida. The district court summarily denied by "endorsed order" the District's motion for summary judgment. The district court found a taking and sent the determination of the value of the taking, along with the substantive due process and equal protection claims, to the jury. The jury returned a verdict in favor of the Saboffs on each of the claims, awarded $100,100.00 for the taking and $14,000 for the substantive due process violation, but found no monetary damages for the equal protection violation. The district court denied the District's post-trial motion for judgment as a matter of law.

## II.    Factual background

In 1984, the Saboffs purchased an unimproved residential lot in the Springs Landing subdivision located in Seminole County, Florida for the purpose of constructing a single family home. The lot is approximately 0.7 acres and fronts the Little Wekiva River. At the time of purchase, the property contained a subdivision restriction prohibiting building on the 0.4 acres adjacent to the Little Wekiva River, since that area was part of the one hundred year flood plain.

3

The District is a state agency with powers under Chapter 373, Florida Statutes, to regulate activities harmful to water resources. In 1988, the Florida legislature enacted Florida Statutes § 373.415, which mandated that the District Governing Board enact rules establishing riparian habitat protection zones adjacent to the waterways of the Wekiva River System, including the Little Wekiva River. Pursuant to the legislation, the District conducted a scientific study, and based upon that study, amended its regulatory permitting rules to establish the Riparian Habitat Protection Zone ("RHPZ"). Any lot in the RHPZ was required to get a management and storage of surface waters ("MSSW") permit prior to construction.

The Saboffs, whose lot was in the RHPZ, applied in March 1991 for a MSSW permit for the construction of a home, swimming pool, and stormwater treatment system on their lot. At that time, the Saboffs' property was the only undeveloped lot in the subdivision. The RHPZ rules required that the Saboffs provide reasonable assurance that their proposed construction activity would not adversely affect the wildlife functions of aquatic and wetland species in the RHPZ and meet water quality and quantity criteria for the discharge of stormwater into the Little Wekiva River. Since the home and pool would require the destruction of 0.3 acres of RHPZ wildlife habitat, the rules required the Saboffs to provide

4

mitigation for the loss of habitat in order to receive the necessary permits. By way of mitigation, the District proposed that the Saboffs place a deed restriction or conservation easement over the rear 0.4 acres of the lot ("Mitigation Area") prohibiting construction on that portion of the property. The Saboffs requested that they be allowed to place decking, a boardwalk, a fence, tree house, sandbox, and a swing set in the Mitigation Area. In June 1991 the Governing Board granted the MSSW permit for the construction of the home and pool, subject to the Saboffs recording a deed restriction or conservation easement, with the additional modification that the Saboffs would be allowed to clear certain types of underbrush from the Mitigation Area.

Interested third parties administratively challenged the permit, but the Saboffs were allowed, through agreement with the District, to commence, and in fact completed, construction in the non-mitigation area prior to the conclusion of the administrative proceedings. Following completion of construction, but prior to a final administrative decision, the Saboffs initiated their judicial challenges to the revised permit's conservation easement requirement. In August of 1992, the administrative process resulted in the approval of the permit subject to the Saboffs' recording a deed restriction or conservation easement.

**III. Discussion**

We review *de novo* the denial of a motion for summary judgment on res judicata grounds.  See Harris v. Board of Education of Atlanta, 105 F.3d 591 (11th Cir. 1997); Fields v. Sarasota Manatee Airport Authority, 953 F.2d 1299 (11th Cir. 1992).

As the district court did not provide any grounds for denying the District's motion for summary judgment, we are without the benefit of the reasons upon which the district court based its decision.

Although the District asserted a number of arguments in its motion for summary judgment which may have resulted in the dismissal of the action, the Court only addresses the threshold issue of res judicata as to the Saboffs' claims for relief.

This case presents an issue previously recognized in Fields v. Sarasota Manatee Airport Authority, 953 F.2d 1299 (11th Cir. 1992), a case squarely on point.  While Williamson County Regional Planning Commision v. Hamilton Bank of Johnston City, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), requires potential federal court plaintiffs to pursue any available state court remedies that might lead to just compensation prior to bringing suit in federal court for a takings

claim, the doctrine of res judicata in conjunction with 28 U.S.C. § 1738[1] precludes a plaintiff from pursuing in federal court a claim previously litigated in state court. Fields, citing Jennings v. Caddo Parish School Bd., 531 F.2d 1331 (5th Cir. 1976), cert. denied, 429 U.S. 897, 97 S.Ct. 260, 50 L.Ed.2d 180 (1976), explains that this apparent dilemma is resolved by the plaintiff "'reserv[ing] her constitutional claims for subsequent litigation in federal court' by 'making on the state record a reservation as to the disposition of the entire case by the state courts' to preserve access to the federal forum." Fields, 953 F.2d at 1303 (quoting Jennings, 531 F.2d at 1332). Fields held that an additional two prerequisites must be met for a "Jennings reservation" to be effective. The potential federal court litigant must be precluded from filing his or her suit in the federal court in the first instance and must be in state court involuntarily. See Fields, 953 F.2d at 1306.

Therefore, the relevant inquiry is whether Florida's law of res judicata would ordinarily bar the Saboffs' subsequent federal claims and, if so, whether the Saboffs made an effective Jennings reservation. See Fields, 953 F.2d at 1307. "'The Florida doctrine of res judicata bars subsequent litigation where there is (1) identity of the thing sued for, (2) identity of the cause of action, (3) identity of

---

[1] Section 1738 requires "a federal court to give a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

persons and parties to the action, and (4) identity of the quality or capacity of the person for or against whom the claim is made.'" Fields, 953 F.2d at 1307-08 (quoting Amey, Inc. v. Golf Abstract & Title, Inc., 758 F.2d 1486, 1509 (11th Cir. 1986), cert. denied, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed. 912 (1986)). Florida law defines identity of causes of action as causes "sharing similarity of facts essential to both actions." Id. (quoting Amey, 758 F.2d at 1510). The facts underlying the state and federal claims at issue are indisputably identical. In Fields, the court held that although a minor distinction exists between the federal and state takings claims, the state claim precluded the subsequent federal claim under res judicata principles. See id. Once again, Fields is on all fours, and it is clear that Florida res judicata principles would normally preclude the subsequent federal action.      Additionally, the state court's dismissal of the Saboffs' state claims constitutes an adjudication of the merits under Florida law for the purposes of res judicata. See Fla.R.Civ.P. 1.420(b)("[u]nless the court in its order for dismissal otherwise specifies, a dismissal. . . other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication on the merits"); Aquatherm Industries, Inc. v. Florida Power & Light Co., 84 F.3d 1388 (11th Cir. 1996).

8

As previously stated, the only way that the Saboffs might have preserved their federal claims, was through a <u>Jennings</u> reservation. Both <u>Jennings</u> and <u>Fields</u> make clear that a <u>Jennings</u> reservation, as an exception to the well-settled doctrine of res judicata, must be set forth clearly, on the record, and at the outset of the state court claim, which was not done in this case. See <u>Fields</u>, 953 F.2d at 1309 n. 10; <u>Jennings</u>, 531 F.2d at 1332. The Saboffs argues that they made an "implicit" <u>Jennings</u> reservation, through an off the record verbal understanding with the District that federal questions would be preserved. Even if the facts supported this conclusion, this off the record communication is clearly insufficient to meet the standard for a <u>Jennings</u> reservation as set forth in <u>Jennings</u> and <u>Fields</u>.

## VI.    Conclusion

<u>Jennings</u> and <u>Fields</u> dictate that the Saboffs' federal law claims are barred by Florida law of res judicata. Therefore, the district court's denial of the District's motion for summary judgment was improper and is REVERSED.