[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 04-16681
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 13, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-21137-CV-JLK

STEVEN M. SHULMAN,

Plaintiff-Appellant,

versus

LIBERTY MUTUAL FIRE INSURANCE
COMPANY, a foreign corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 13, 2006)

Before ANDERSON, BIRCH and RONEY, Circuit Judges.

PER CURIAM:

Dissatisfied with the $24,386.03 payment by Liberty Mutual Fire Insurance Company on his homeowner's water and mold damage insurance claim, appellant Steven M. Shulman filed a one-count breach of contract action against Liberty Mutual in Florida state court. The contract action alleged that Liberty Mutual had "failed and refused, and continues to refuse to pay the aforementioned damages despite knowing that it is required to do so." Liberty Mutual did not dispute coverage of the claim but instead the amount to be paid on it. Shulman accepted Liberty Mutual's Proposal for Settlement of this lawsuit, resulting in the dismissal with prejudice of the state court action. Shulman filed a second lawsuit alleging, *inter alia*, a Florida Statute § 624.155 bad faith claim against Liberty Mutual relating to this insurance claim. Shulman now appeals the district court's grant of Liberty Mutual's motion to dismiss his bad faith claim on *res judicata* grounds. Because Shulman neglected to raise the bad faith claim prior to settlement and dismissal of his initial lawsuit where Liberty Mutual did not dispute coverage, Shulman's subsequent bad faith lawsuit relating to that claim is barred under the doctrine of *res judicata.* Accordingly, we affirm.

In August 2002, Shulman contacted Liberty Mutual to report water and mold damage in the closets next to his home's fireplace, as well as the surrounding living areas, caused by a roof leak ("First Loss"). Liberty Mutual assigned Daniel

Guilfoyle to adjust the loss. Guilfoyle hired an inspection company to determine the extent of the damage to Shulman's home. On August 22, the inspection company evaluated the condition of the home but did not issue its report until six weeks later. On August 23, Guilfoyle inspected the home, advising Shulman that there would be no problem in repairing the structural damage to the home, as well as replacing the damaged contents. Liberty Mutual then appointed a restoration company to prepare a repair estimate. On October 4, 2002, the restoration company visited the home. The company did not, however, return with an estimate until weeks later. On October 28, Guilfoyle again visited Shulman's home, this time taking measurements. Guilfoyle then told Shulman that the damaged contents of his home would not be covered. After not receiving any repair estimates from the companies hired by Liberty Mutual, Shulman hired an attorney to assist him in getting the claim paid.

On November 13, 2002, Shulman filed a Civil Remedy Notice of Insurer Violation. On November 22, Shulman retained a restoration company to prepare an independent estimate for repair of the damages to his home. That company estimated the damages at $74,462.92. Five days later, Liberty Mutual sent Shulman a check for $24,386.03.

Disagreeing with the $24,386.03 amount, Shulman submitted a Proof of Loss to Liberty Mutual on January 17, 2003, seeking "payment for his actual damages due to the First Loss." This Proof of Loss was rejected by Liberty Mutual on March 13, 2003, reasoning that the Proof of Loss had failed to comply with the policy's provisions. Liberty Mutual also invoked the policy's appraisal provisions, disputing the amount of the damages.

On April 8, 2003, Shulman filed a one-count breach of contract action against Liberty Mutual in Florida state court. During the pendency of the state court contract action, Liberty Mutual completed its appraisal process. On April 30, 2003, Shulman was awarded $41,747.67 for the damages to his home. Liberty Mutual thus tendered payment to Shulman for the undisputed amounts of the loss or damage on the claim, but a dispute remained as to additional amounts of loss Shulman had believed were due to him under the policy.

While the state court contract claim was pending, Shulman discovered a *second* water leak in his master bathroom on July 9, 2003 (the "Second Loss"). Also on July 9, 2003, Shulman found what he deemed to be "hidden" water and mold damage in his kitchen sustained as a result of the First Loss, which had already been appraised and awarded to Shulman on April 30, 2003. Until July 2003, it was not known by either Shulman or Liberty Mutual that the water and

4

mold damage had spread to the kitchen area. Despite learning of the damage in the kitchen in July 2003, Shulman never amended his contract action, which was still pending in the state court, to specify the damage sustained by this "hidden" damage in the kitchen.

On July 15, 2003, Shulman filed a second claim under the insurance policy relating to the Second Loss. An estimate for these repairs was forwarded to Liberty Mutual on September 16, 2003. Shulman disagreed with this estimate, arguing that it did not include an estimate for mold remediation to the master bedroom, hall, office, living room or dining room, which he claimed had been re-contaminated by the leak in the master bathroom.

On October 31, 2003, Liberty Mutual served a Proposal for Settlement seeking to resolve the pending Florida state court contract action addressing the First Loss. Shulman accepted that proposal on November 6, 2003, and the state court action was dismissed with prejudice on January 21, 2004. The Proposal for Settlement stated, "Acceptance of this Proposal relieves all claims between these parties that have been asserted in the pending action." Shulman accepted this settlement and never amended his breach of contract action to include the "hidden" damage found in the kitchen in July 2003 as a result of the First Loss.

On December 18, 2003, after accepting Liberty Mutual's settlement offer, Shulman submitted *additional* sworn statements of Proofs of Loss to Liberty Mutual for the hidden damage in the kitchen. Liberty Mutual rejected these Proofs of Loss, stating that the damages attributable to the roof leak were settled in the contract action.

Liberty Mutual issued $37,814.83 as full and final payment for the Second Loss, reflecting damages sustained to the master bedroom. Again dissatisfied with the amount, Shulman, on February 4, 2004, filed a second Civil Remedy Notice of Insurer seeking settlement of the second claim. Since then, Liberty Mutual has invoked its right to appraisal of the Second Loss.

On May 13, 2004, Shulman filed a two-count statutory bad faith claim in the district court. The first count alleged that Liberty Mutual did not in good faith attempt to settle claims set forth in his first civil remedy notice relating to the First Loss, and the second count alleged similar allegations as to the second civil remedy notice relating to the Second Loss. Shulman alleged, "By paying a portion of Shulman's claims, Liberty Mutual has conceded coverage under the Policy for both claims, and a bad faith action is accordingly ripe."

Liberty Mutual moved to dismiss the statutory bad faith claim as barred by the doctrine of *res judicata* and the action for the Second Loss as premature,

6

pending appraisal. The district court granted the motion to dismiss, holding that because "Plaintiff failed to assert a bad faith claim in his state court breach of contract action filed approximately five months after Defendant's payment on the First Loss, Defendant is precluded from litigating the issue again, after the parties already settled the case."

Shulman only appeals the dismissal of Count 1 of his bad faith complaint. He argues the doctrine of *res judicata* does not operate to bar a Florida policyholder from litigating a bad faith claim separately from, and subsequent to, establishing coverage in an action on the policy.

The district court did not err by granting Liberty Mutual's motion to dismiss on Shulman's bad faith claim. Shulman correctly notes in his initial brief that a Florida statutory bad faith claim cannot be brought at the same time as a claim *disputing insurance coverage. See Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991) (explaining that one prerequisite of a bad faith claim under Florida law is "a determination of the existence of liability").

The Florida state court contract action brought by Shulman on April 8, 2003, did *not*, however, dispute coverage but instead disputed the amount of the claim paid Liberty Mutual. Liberty Mutual never disputed coverage in this case. In fact, prior to filing that state law contract case, Shulman had already received a

7

$24,386.03 payment by Liberty Mutual on the First Loss. The gravamen of his lawsuit was thus not addressing coverage under the policy but instead the amount of money due to be received under the policy. Shulman's bad faith lawsuit itself asserts, "By paying a portion of Shulman's claims, *Liberty Mutual has conceded coverage under the Policy for both claims, and a bad faith action is accordingly ripe.*" By Shulman's own allegation, therefore, his bad faith action as to the First Loss was ripe at the time he had received Liberty Mutual's $24,386.03 in November 2002, whereby so paying, Liberty Mutual had admitted coverage liability. *See, e.g.*, *Blanchard*, 575 So. 2d at 1291 (explaining that a claim for bad faith accrues once the underlying contract action is resolved). Furthermore, by agreeing to the settlement, Shulman also "resolve[d]" all claims between the parties regarding the First Loss.

Because the facts underlying the bad faith claim were known to Shulman at the time he filed his state contract claim lawsuit and certainly before he had accepted Liberty Mutual's settlement offer and the state court case was dismissed with prejudice, it was impermissible for him to split his causes of action under the doctrine *of res judicata. See, e.g., Saboff v. St. John's River Water Mgmt. Dist.*, 200 F.3d 1356, 1360 (11th Cir. 2000) (applying Florida law's doctrine of *res judicata*); s*ee Florida Dep't of Transp. v. Juliano*, 801 So. 2d 101, 105 (Fla. 2001)

8

(explaining that the doctrine of *res judicata* "precludes consideration of issues that could have been raised but were not raised in the first case").

AFFIRMED.